BOONVILLE NAT. BANK OF BOONVILLE, IND., v. BLAKEY. BLAKEY
v. BOONVILLE NAT. BANK OF BOONVILLE, IND. PEOPLE'S
BANK OF BOONVILLE, IND., v. BLAKEY.

(Circuit Court of Appeals, Seventh Circuit. April 9, 1901.)

Nos. 745, 748, 749.

1. BANKRUPTCY—APPEALS—TIME FOR TAKING.
    The provision of Bankr. Act 1898, § 25, subd. "a," limiting the time for
    taking appeals in the cases therein specified to 10 days, has no applica-
    tion to appeals in independent proceedings instituted for the recovery of
    assets of the estate or to set aside alleged preferences, which are gov-
    erned by the general provisions regulating appeals to the circuit courts
    of appeals.[1]

2. SAME—JURISDICTION OF DISTRICT COURT—SUIT TO RECOVER PREFERENCES.
    A district court has jurisdiction of a suit in behalf of a bankrupt's es-
    tate to recover preferences by the consent of the defendants, and after
    a hearing on the merits without objection they cannot raise the objection
    on appeal for the first time.

3. SAME—RECEIVER—POWER TO MAINTAIN SUIT.
    The receiver authorized to be appointed by a court of bankruptcy by
    Bankr. Act 1898, § 2, cl. 3, "in case the court shall find it absolutely nec-
    essary for the preservation of estates, to take charge of the property of
    the bankrupts after the filing of the petition and until it is dismissed or
    the trustee is qualified," is limited in his powers to the evident purpose
    for which the statute authorizes his appointment, which is to take charge
    of the visible property of the bankrupt and preserve it as custodian until
    the appointment of a trustee. He cannot exercise the powers of a trus-
    tee for the creditors, and has no authority to maintain a suit to set aside
    a preferential payment made by the bankrupt to a creditor, which is
    conferred only by the act itself, in section 70, subd. "e," and specifically
    upon the trustee.

Appeals from the District Court of the United States for the Dis-
trict of Indiana.

See 95 Fed. 267.

On February 2, 1899, an involuntary petition was filed in the court below,
sitting in bankruptcy, by three creditors of Marion Folsom, to procure his
adjudication as a bankrupt. These creditors represented about $1,650 of a
total indebtedness exceeding $28,000. On February 28th of that year Folsom
was adjudged a bankrupt, and March 30th was appointed as the day for the
first meeting of creditors and the selection of a trustee. On March 7th the
petitioning creditors presented to the court their petition for the appointment
of a receiver, based upon three grounds: (1) That the bankrupt's affairs and
accounts were in disorder, and he was unable to give an accurate list of his
creditors; that it was necessary, for an orderly administration of the affairs
of the estate with proper notice to creditors, that some person immediately
take the books and accounts and prepare a correct statement thereof, with a
list of creditors, without delay. (2) That the bankrupt left certain real estate
requiring immediate care and attention. (3) That the bankrupt, within four
months of the filing of the petition and of the adjudication, sold his entire
stock of goods for about the sum of $10,000, and used the proceeds in pay-
ment of pre-existing debts under circumstances which made the same pref-
erences under the bankrupt act; that all of such sums still belong to and
should be a part of the estate, and should be recovered back by a trustee or
receiver; that to preserve the evidence of the transactions of the transfers,
and to make immediate preparation for the recovery of the estate and the
taking of all necessary steps looking thereto, and for the preservation of the

[1]Appeal and review in bankruptcy, see note to In re Eggert, 43 C. C. A. 9.

estate, some person should be immediately appointed and authorized to take such steps. Thereupon, on that day, the court, "believing it to be for the best interests of the trust that a receiver be appointed to take charge of the property and affairs of said bankrupt until a trustee shall have been elected and qualified, and until the further order of this court in this behalf," appointed William M. Blakey receiver, to have charge and control of the property, rights, choses in action, and assets of every kind belonging to the bankrupt or his estate, and empowered the receiver to prosecute all necessary suits, to collect all sums of money or property belonging to the bankrupt or, his estate, to set aside any preferences to creditors, and to intervene in any action in which the property of the bankrupt may be involved. The order further directed that all persons indebted to or having property of the bankrupt pay and deliver the same forthwith to the receiver, and enjoined all persons from in any manner interfering with the property or estate of the bankrupt. The order further authorized the receiver to employ counsel as he may deem necessary, whose compensation should be subject to the order of the court. On the 29th of March the receiver filed in the district court his bill in equity against the Boonville National Bank, the People's Bank of Boonville, Herbert E. Hoggatt, Thomas White, William Leslie, John G. Shyrock, William M. Strain, Charles M. Hammond, Truman P. Tillman, Marion Folsom, the bankrupt, and Laura Folsom his wife, and Frank H. Hatfield, charging that on January 23, 1899, the bankrupt sold his stock of goods to one McClary and one Perigo for $9,740.08, and received from the purchasers that sum; that Folsom had delivered certain choses in action upon sale or for collection to Hammond and Tillman, who thereupon joined Folsom in a note for $2,000, which was discounted and the proceeds received by Folsom, with the purpose to use the amount in payment of debts; that if this transaction be valid, and Hammond and Tillman are entitled to hold the securities assigned, there will be a surplus for which they should account. But it is charged that Hammond and Tillman, at the time they took the security, had reasonable cause to believe that Folsom was obtaining the money with intent to cheat, hinder, and delay his creditors and to use it to prefer creditors, and that therefore the choses in action belonged to the estate; that Folsom owed the Boonville National Bank over $6,400, represented by notes secured by indorsements which were not then due; that he owed the People's Bank $1,038, not then due; that he owed Hoggatt over $4,000, White over $4,000, Leslie $500, Shyrock $1,000, Strain $400, and Laura Folsom $5,000; that he then paid substantially all of these debts, except that of Laura Folsom, with intent to give a preference to such creditors, each of whom at the time had reasonable cause to believe that Folsom was insolvent and that a preference was thereby designed; that certain real estate conveyed by Hatfield to Laura Folsom by deed recorded in January, 1899, but purporting to be executed in February, 1897, was in fact purchased and paid for by Marion Folsom, and a deed therefor delivered to him, but it was not recorded, and was thereafter destroyed, and the recorded deed to Laura Folsom substituted; all with a view to hinder, delay, and defraud the creditors of Marion Folsom. The two banks separately demurred to the bill upon the ground of multifariousness. The demurrers being overruled, they answered to the merits, and the cause, after reference to and report by the master, proceeded to hearing and decree. On June 2, 1900, the court adjudged that the complainant recover of the Boonville National Bank $6,413.25, of the People's Bank $1,038, and that as to Hoggatt, White, Leslie, Shyrock, Strain, Hammond, Tillman, Laura Folsom, and Hatfield the bill be dismissed. Each of the two banks assigned for error that the court erred in confirming the report of the master that the complainant is entitled to recover the amount paid to the bank by the bankrupt, and that under the evidence and facts the bill should have been dismissed for want of equity. The banks severally appealed, but more than 10 days after the entry of the decree. The receiver assigned error, with respect to the decree against each of the banks, that the court improperly refused to allow interest upon the sum adjudged, and also assigned error for dismissal of the bill as to Laura Folsom, Hoggatt, Leslie, and Shyrock, and appealed from the decree. In each of the appeals by the banks a motion is made to dismiss upon the ground that the appeal was not timely.

Azro Dyer, for banks.

John E. Iglehart, for receiver.

Before WOODS, JENKINS, and GROSSCUP, Circuit **Judges.**

JENKINS, Circuit Judge, after the foregoing statement of the case, delivered the opinion of the court.

The motions to dismiss are without merit and must be overruled. They proceed upon the theory that from all decrees or orders affecting the bankrupt's estate an appeal must be taken within ten days, under section 25 of the bankrupt act. This is an erroneous view. That section, limiting the time for appeal to ten days, has application only to decrees or orders in the bankruptcy proceedings, and to the three particular cases mentioned in the section. In the case at bar the claims were by the estate against strangers to the estate, asserted in independent proceedings. The section has no reference to independent suits to assert title to money or property as assets of the bankrupt against strangers to the proceedings. Such independent suits with respect to appeals come under the provision of the act creating circuit courts of appeals with respect to the period of limitation for an appeal. Steele v. Buel (C. C. A.) 104 Fed. 968. The appeals here were therefore timely.

The objection that the district court had not jurisdiction to entertain the bill cannot be upheld. It was ruled in Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, that the district court can by consent of the defendant, but not otherwise, entertain jurisdiction over suits brought by trustees in bankruptcy to set aside fraudulent transfers by the bankrupt to third parties before bankruptcy. The jurisdiction of the district court to entertain this bill was not objected to by the defendants in any form or at any stage of the proceeding in the court below. It is here urged for the first time. We can conceive of no more solemn and deliberate manner in which the consent of a defendant to the exercise of jurisdiction by the district court can be manifested.

The case involves the important question, patent upon the face of the bill, whether a receiver in bankruptcy, appointed before the selection of a trustee, can maintain suit to recover the amount of a preferential payment made by the debtor prior to the bankruptcy. It is insisted on behalf of the receiver that this question is not before us, because, as claimed, it is not raised upon the record. The question goes to the right of the complainant in the bill to recover, and his right and title to the thing or sum of money demanded. We find it assigned for error that the court allowed the recovery and refused to dismiss the bill for want of equity. While possibly this assignment is not as specific as it should be, we nevertheless think it broad enough and specific enough to present the question of the right of the complainant to recover. The question does not go to the jurisdiction of the district court to entertain the bill, but, assuming and conceding jurisdiction, to the right of the complainant to recover specific moneys of the defendants. If, however, the assignment of error could be justly held to be too

vague to entitle the two banks to demand as matter of right that we should entertain the question, we are not thereby precluded from its consideration. Rule 11 of this court, which provides that errors not assigned according to the rule will be disregarded, reserves to the court the right at its option to notice a plain error not assigned. The rule is one of order and of convenience in aid of the court, and was not designed to prevent the correction of an obvious error in any case when, in the judgment of the court, the importance of the question demands its consideration. The necessity for proper and orderly proceedings in bankruptcy matters, and the restriction of power to the purposes and within the limits of the bankrupt act, require at our hands the consideration of the question, even if the supposed error were not well assigned.

The authority for the appointment of a receiver in bankruptcy proceedings comes from the act and is limited by the act. The order of the court appointing him cannot be broader than the statute. The receiver is a statutory receiver, and not a general receiver. The latter is appointed by a court of chancery by virtue of its inherent power, independent of any statute. His authority is derived from, and his duty prescribed by, the order of appointment, and he is called a common-law receiver. Herring v. Railroad Co., 105 N. Y. 340, 12 N. E. 763. A statutory receiver is one appointed in pursuance of special statutory provisions. He derives his power from the statute, and to it must look for the duty imposed upon him. He possesses such power only as the statute confers, or such as may be fairly inferred from the general scope of the law of his appointment. We are therefore referred to the bankrupt act (30 Stat. c. 541) to ascertain the power of the bankruptcy court to appoint a receiver, and the extent of the power which the act confers upon him. By section 2, cl. 3, the courts of bankruptcy are invested with authority to "appoint receivers or the marshals upon application of parties in interest, in case the court shall find it absolutely necessary for the preservation of estates, to take charge of the property of the bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified," and to (section 2, cl. 5) authorize the business of the bankrupts to be conducted for limited periods by receivers and marshals or trustees, if necessary, in the best interests of the estates. These are the sole provisions of the act which authorize a receiver and define his duties. There is, however, another provision which may properly be considered in this connection. In section 69 it is provided that before adjudication upon an involuntary petition, when it shall appear to the judge that the property of the alleged bankrupt is being neglected, so that it will deteriorate in value, a warrant may be issued to the marshal to seize and hold the property subject to further order, upon the petitioning creditors giving bond to indemnify the alleged bankrupt for the damages he shall sustain if such seizure shall be proved to have been wrongfully obtained, and the property, when seized, shall be released upon bond filed by the alleged bankrupt conditioned to turn over the property or its value in money to the trustee in the event of adjudication of bankruptcy.

What, then, is the intent of the law with respect to the rights and powers of the receiver? The statute requires (section 55) that the court shall cause the first meeting of creditors to be held not more than 30 days after the adjudication, and if, through mischance, the meeting should not be held within that time, the court shall fix the date as soon as may be thereafter when it shall be held. Section 44 provides that creditors at their first meeting after adjudication shall appoint a trustee, and, failing therein, the court shall do so. He is by section 70a vested by operation of law with the title as of the date of adjudication, except exemptions, to the property of the bankrupt, with power of sale and disposition. Subdivision "e" authorizes the trustee to avoid any transfer by the bankrupt of his property which any creditor might have avoided, and to recover the property so transferred or its value. Section 60a defines a preference, and section 60b provides that a preference within four months of the filing of the petition to one having reasonable cause to believe that it was intended thereby to give a preference shall be voidable by the trustee, and he may recover the property so transferred or its value. We can now discover, as we think, the general purpose of this law. It was that the property of the bankrupt should be vested in a trustee, to be selected by creditors; that such officer should have the general control and management of the estate, and the right to recover for the benefit of creditors all property transferred in fraud of the act. It contemplated that between the filing of the petition and the adjudication of bankruptcy an emergency might arise with respect to the care of the bankrupt's property; and, in involuntary cases, for the protection of the property in the interval between the filing of the petition and the adjudication, the bankruptcy court was authorized to direct the marshal to seize and hold the property pending adjudication. So, also, in voluntary or involuntary cases, when it was found absolutely necessary for the preservation of an estate, the court should appoint a receiver or the marshal to take charge of the property of the bankrupt until the petition is dismissed or the trustee is qualified. It plainly was not contemplated that the receiver or the marshal so designated should supersede the trustee or exercise the general powers conferred upon a trustee. There is no such power specifically conferred or any provision in the act from which such power can reasonably be implied. Such temporary receiver, whether he be the marshal or another, is not a trustee for the creditors, but is a caretaker and custodian of the visible property pending adjudication and until a selection of a trustee. If in any sense a trustee, he is trustee for the bankrupt, in whom is the title to the property until it passes by operation of law as of the date of adjudication to the trustee selected by the creditors. The duty required and the power conferred clearly are that the receiver or the marshal should take possession of property that would otherwise go to waste, and hold it and preserve it, so that it might come to the trustee, when selected, without needless injury. There might also be an occasion when the business of the bankrupt ought not, in the interest of the creditors, to be temporarily suspended,

as for example in the case of a hotel or other business, where the value of the good will required that it should be kept a going concern until the trustee should be appointed, and for a limited time after the trustee was appointed, that he might dispose of it profitably for the creditors.

We fail to find any provision in this law which sanctions the bringing of a suit by a receiver to recover a preferential payment to a creditor. Such a right does not come within the purpose for which a receiver is authorized, and is neither expressly nor impliedly sanctioned. A preferential payment to a creditor could not be recovered back by the bankrupt. It could not be gainsaid by a creditor, unless through the trustee and under the bankrupt act. The transaction is not void even under the act. It is voidable merely, and voidable only by the trustee. The payment is not inherently wrong, being in discharge of an honest debt. The trustee, as representative of and in the interest of all the creditors, and not of the petitioning creditors alone, is to determine in the first instance whether the payment was made with a view to give a preference, and whether the creditor receiving payment had reasonable cause to believe that it was so and if proof is forthcoming. He is to ascertain the facts and to determine the probability of successful litigation, and whether the creditor sought to be pursued is responsible, so that the estate should not be mulcted in unnecessary litigation and costs. The receiver or marshal is, in the contemplation of the act, merely the temporary custodian selected to take possession of visible property liable to waste, and to conserve it until the trustee shall be selected by the creditors within the 30 days limited, or appointed by the court; but he is vested with no right to avoid a transaction which by the act is specifically given to the trustee, and which, but for the act, would not exist. It is not within the spirit or letter of the law that the necessity of a trustee should be superseded. It is required that at the earliest opportunity—at the first meeting of creditors—he should be selected. If the creditors therein fail, the duty upon the court is imperative—not permissive—to appoint one. The receiver or marshal takes possession of the visible property of the bankrupt for delivery to the trustee,—not to pursue the debtors of the estate, not to enforce rights of action vested in the trustee alone, not to involve the estate in possibly unnecessary litigation.

We think we should do violence to both the letter and the spirit of the act to enlarge the functions of a mere temporary custodian, and to construe the law as vesting him with functions, powers, and duties which are clearly not contemplated by the act. It follows, therefore, that the receiver had no right to declare void the payments in question and no right to recover the sums demanded. That can only be done by the trustee; for in no other officer is the right vested. We do not say that the receiver may not, by suit or otherwise, assert or defend his possession of the visible property which the law has placed in his custody. That question is not before us. But he cannot usurp the functions of a trustee and avoid payments to creditors when no right so to do is conferred by the law.

Upon the appeals of the banks, in cases Nos. 745 and 749, the decree is reversed, and the cause is remanded, with directions to dismiss the bill. In the case of the appeal by the receiver, in No. 748, the decree dismissing the bill is affirmed.