## STELLING v. G. W. JONES LUMBER CO.

(Circuit Court of Appeals, Seventh Circuit. May 6, 1902.)

No. 770.

1. BANKRUPTCY—SUITS BY TRUSTEE—APPEALS.

A suit by a trustee of a bankrupt against a third person to enjoin him from interfering with the alleged possession by the trustee of property claimed by both parties, brought in the district court, is not a "bankruptcy proceeding," within the meaning of Bankr. Act 1898, § 25a, but is an independent suit in equity, of which that court has jurisdiction only by the defendant's consent, and is reviewable by appeal under the general provisions of the law relating to circuit courts of appeals.

2. SALES—CONSTRUCTION AND VALIDITY OF CONTRACT.

A contract entered into in good faith by which one party sought to purchase the season's output of a lumber mill owned by the other, and by which it agreed to make advances from time to time as required by the mill owner to procure logs and bring them to the mill, and to pay operating expenses,—the logs when reaching the mill, and each pile of lumber when cut therefrom, to be marked with the purchaser's brand and to be its property,—is an executory contract for the manufacture and sale of lumber, and not a chattel mortgage which must be filed for record to be valid under the Wisconsin statute; nor is it rendered a mortgage by the fact that the advances were made in part by means of indorsing and discounting the seller's notes, which the purchaser agreed to take up and return in settlement for the lumber when shipped, nor because it became necessary, in order to enable the seller to carry out the contract, for the purchaser to make larger advances than contemplated, even beyond the probable value of the lumber, for which it took security; such advances being regarded by the parties as payments on the contract up to the value of the lumber which should be delivered.

3. SAME—DELIVERY.

Where logs brought to the mill under such contract were branded with the brand of the purchaser, and the lumber, when cut, was piled, and each pile marked with its name, there was all the delivery to the purchaser of both logs and lumber possible under the contract, which required the logs to be brought on the seller's premises for manufacture, and such as to satisfy Rev. St. Wis. 1898, § 2310, which makes sales presumptively fraudulent against creditors of the vendor unless accompanied by an immediate delivery, and followed by an actual and continued change of possession; conceding that such statute applies to a contract for the sale of property not at the time in esse, but which is thereafter to be manufactured.

4. SAME—CONVEYANCE IN TRUST—RESERVATION BY VENDOR OF RIGHT TO SELL.

A clause in the contract giving the sellers "the privilege of retailing any stock included in this contract, providing no advances have been made on the same," to that extent qualifying the general provision for the sale of the "entire stock" of lumber to be cut during the season in the sellers' mill, did not render it void, under Rev. St. Wis. 1898, § 2306, providing that all conveyances and transfers of chattels made in trust for the use of the person making the same shall be void as against his creditors; it appearing that the reservation was made in good faith, to protect the sellers' retail trade, and that only a small quantity of lumber was sold thereunder.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

¶ 4. See Fraudulent Conveyances, vol. 24, Cent. Dig. § 450.

The following is the opinion of the district court (SEAMAN, District Judge):

"The amount involved in this controversy is considerable, and the testimony has been heard in open court. The absence of conflict in matters material to the issue is noteworthy,—especially in view of the disputes heretofore existing,—and the issues are thereby simplified. No actual fraud appears, and the issue raised as to constructive fraud is clearly set aside by the testimony. The contract in writing between the bankrupts and the Jones Company, which was made August 9, 1899, was unmistakably an executory agreement of bargain and sale for the logs, and lumber to be manufactured out of the same,—for the season's cut and purchases of logs. The advances to be made by the Jones Company, and which were made in fact, were for purchase money, and in no sense to be treated as loans. The securities taken directly and taken up by the Jones Company were solely for the same object, and were securities merely in favor of the Jones Company to make good their advances (1) for deliveries of the lumber as contracted; and (2) to cover any shortage arising from the possible excess of advances. The subsequent arrangement of making notes for the advances does not change this status, as it was manifestly intended only to enable the Jones Company to borrow of the banks the amounts thus called for in excess of the advances contemplated by the contract. The rule applicable to chattel mortgages and to loans secured upon personal property is not applicable to these transactions.

"The first contention on behalf of the trustee is that deliveries were not so made and perfected as to make complete execution of the contract, but the testimony is uncontradicted that the logs were marked as the contract required when hauled to the yards; that the piles of lumber were so marked when the piles were completed, as taken from the mill. The absence of marks in piles which were broken for the purpose of shipment is not material, nor would it be material if piles were in fact overlooked and left unmarked; the general intention appearing to give this indicia of delivery, and there being no concealment or intentional evasion. As so piled for the purpose of delivery under the contract, the delivery was made as contemplated by the contract; and all the lumber was thus delivered to the Jones Company, and was in their possession as purchasers.

"The contention that the transaction was void by reason of the agreement to permit retail sales by the bankrupts is equally untenable. In the first place, the agreement permitted such sale only before advances were made; and the fact that sales were suffered afterwards for small amounts, even with the knowledge of the Jones Company, cannot be treated as a transaction in fraud of creditors, in respect of a contract of absolute purchase, as here shown. It was plainly a case of taking back from the purchaser so much as required for such purpose, or of withholding that much from delivery under the contract, and was inconsiderable in amount, and, so far as permitted, was neither harmful to creditors, nor so intended.

"An order will be entered accordingly."

On December 20, 1900, the appellant filed his petition in the court below, setting forth the adjudication of August F. Rusch and Ferdinand O. Rusch as bankrupts, and his election as trustee in bankruptcy, and its confirmation by the court; that he had in his possession and under his control a certain large quantity of lumber then situate on the mill property upon section 8 in the village of Wabeno, Wis.; that the G. W. Jones Lumber Company, a corporation of the state of Wisconsin, claimed a lien upon the lumber, which the trustee denied, and that such company threatened to take forcible possession of the lumber, and that the trustee had placed a custodian in charge, with instruction to hold possession by force, and praying judgment directing the trustee to sell the lumber; that the G. W. Jones Lumber Company may be summoned to answer the petition, and in the meantime may be restrained from interfering with his possession. On the 2d of January, 1901, the G. W. Jones Lumber Company answered the petition, denying possession and control of the specified lumber by the trustee, and alleging that the lumber was at the time of the adjudication of

bankruptcy, and still is, in the possession and control of the G. W. Jones Lumber Company. It denied that it claimed to have any lien upon the lumber, but alleged that it was the sole and absolute owner thereof, in possession thereof, and denied the threats to take possession, because it already had possession and was maintaining that possession.

At the hearing of the cause a large amount of testimony was taken before the court, and the court on the 2d day of February, 1901, found the following facts and conclusions of law:

"First. That on the 9th day of August, A. D. 1899, the said bankrupts, together with the G. W. Jones Lumber Company, entered into the contract which is set forth by copy in the proof of claim filed in this matter by the said G. W. Jones Lumber Co., and therein marked for identification 'Exhibit A.'

"Second. That in the making and in the carrying into execution of said contract there was neither actual nor constructive fraud.

"Third. That said contract was an executory agreement of bargain and sale for the logs therein specified, and the lumber to be manufactured therefrom; that the advances to be made by the G. W. Jones Lumber Co., and which were in fact made, were for purchase money, and in no sense to be treated as loans; that the securities taken directly to, and also those purchased and taken up by, The G. W. Jones Lumber Company were so taken and so purchased for the same object, and were securities merely in favor of the said lumber company to make good their advances (1) for deliveries of the lumber as contracted, and (2) to cover any shortage arising from the possible excess in advances.

"Fourth. That it was the intention of the parties to said contract that the title to and possession of the logs therein specified should pass to The G. W. Jones Lumber Company as fast as the same were delivered in the mill yard of the Rusch Bros. at Wabeno, and marked with the mark of the Jones Lumber Company; that the lumber in question was manufactured from logs that were actually so delivered and so marked; that it was also the intention of the parties that the lumber in question, as fast as manufactured and piled up in the mill yard, should be marked with the mark of the G. W. Jones Lumber Company, as further evidence of its title and possession, and said lumber was accordingly actually marked with the said lumber company's mark for the purpose aforesaid as fast as the same was stacked up in piles in said mill yard by the Rusch Bros.; that said logs were all delivered as aforesaid prior to April 1, 1900, and said lumber and other products of logs were all manufactured, piled, and marked as aforesaid prior to October 5, 1900.

## "Conclusions of Law.

"As conclusions of law the court holds:

"First. That at the time of filing the petition in bankruptcy in this matter The G. W. Jones Lumber Company was the absolute owner as purchaser of all the lumber, lath, shingles, slabs, railroad ties, and other products of logs piled upon the aforesaid section eight in the vicinity of the Rusch Bros.' sawmill at Wabeno, Forest county, Wisconsin, and as such purchaser The G. W. Jones Lumber Company had all of said lumber, lath, shingles, slabs, railroad ties, and other products of logs in its actual and lawful possession.

"Second. That the aforesaid temporary injunction ought to be dissolved, and that the petition of the said trustee for leave to sell and dispose of said lumber ought to be denied, with costs.

"Third. That The G. W. Jones Lumber Company did not enter into or carry into execution said contract of August 9, 1899, with intent to hinder, delay, or defraud the creditors of said Rusch Bros. The contention that the transaction was void by reason of the agreement to permit retail sales by the bankrupts is equally untenable. In the first place, the agreement permitted such sales only before advances were made; and the fact that sales were suffered afterwards for small amounts, even with the knowledge of the Jones Company, cannot be treated as a transaction in fraud of creditors in respect of a contract of absolute purchase and sale, as here shown. It was plainly a case of taking back from a purchaser as much as required

for such purpose, or of withholding that much from delivery under the contract, and was inconsiderable in amount, and, so far as permitted, was neither harmful to creditors, nor so intended.

"Fourth. That the said G. W. Jones Lumber Company ought not to be interfered with by the trustee, nor by him in any way prevented from shipping and disposing of, as its own property, the aforesaid lumber and other product of logs in all respects as provided by said contract of August 9, 1899."

And thereupon rendered judgment dismissing the petition of the trustee, from which decree this appeal is taken.

The contract referred to in the findings is as follows:

"Memorandum of contract and agreement entered into this 9th day of August, 1899, made in duplicate by and between Rusch Brothers, of Wabeno, Wisconsin, party of the first part, and G. W. Jones Lumber Co., of Appleton, Wisconsin, party of the second part. Said Rusch Brothers, party of the first part, for consideration hereinafter named, sell their entire stock of basswood, pine, and hardwood lumber, shingles and lath, and hemlock, to be cut and manufactured in their mill at Wabeno, Wisconsin, during the year 1899–1900. Said timber to be cut from lands held on contract by Rusch Brothers, and also from logs to be bought from settlers and loggers. Party of the first part agrees that all logs shall be cut into such lengths and in manner as directed by party of the second part, and sawed into lumber, and piled each length, and each thickness separate, and such grades piled separate as directed by party of the second part. The lumber to be cut and piled in best workmanlike manner and loaded on cars, and all assorted into such grades as party of second part may require when stock is being loaded. All work to be done under the direction and to the satisfaction of party of the second part. It is hereby agreed and understood that when the logs are cut from said lands held in contract, and also logs bought, said logs shall be scaled, and, when scaled, marked or stamped with a stamp furnished by party of the second part. And the absolute title of ownership and possession is hereby acknowledged and agreed as passing to the party of the second part. And that, when each pile of lumber is up and completed, said pile shall be marked with the initials of the G. W. Jones Lumber Co., to further indicate its ownership and possession. Party of the second part agrees that they will advance to Rusch Bros. money necessary to make the payment required on their land contract with the C. & N. W. Ry. and other parties, and as security for such advance said Rusch Bros. shall assign to the G. W. Jones Lumber Co. the land contracts they hold on such lands. Party of the second part further agrees that they will advance on each thousand feet of logs to pay expense of cutting, logging, and manufacturing said lumber an amount equal to five dollars ($5.00) per thousand feet, board measure, as follows: Three dollars per thousand as soon as logs are delivered at mill yard, scaled, and stamped. Two dollars per thousand on the 10th day of each month for what lumber has been sawn and piled during the month previous, based on estimate of lumber made at end of each month by both parties, at which date party of the first part shall render to party of the second part statement showing amount due for labor on logs and for all manufacturing purposes in connection with said stock of lumber. Party of second part also agrees to furnish the necessary money for the purchase of logs from other parties, to the amount of ten thousand ($10,000) dollars. All such logs are to be scaled and stamped and statement made of each different lot delivered during any month on the tenth day of month following, and on such statement, after deducting amounts advanced on said logs in supplies, said G. W. Jones Lumber Co. shall, on or before the fifteenth day of each said following month, pay for said logs.

"Said party of the second part agrees that when they ship out said lumber, all of said stock shall be scaled and inspected by them, and after figuring up all moneys and advances, with interest at six per cent. added, cost of insurance, and taxes, they will figure the lumber and shingles at following prices, loaded on cars at Wabeno, Wisconsin:

Basswood, common and better, 5" and wider, 8' and longer.... $13 25
Shipping culls, to include all clear 4" and 6' stock.............. 6 50
Mill culls ................................................. 5 00
245 rock elm, soft elm, ash, birch and maple, common and
    better ................................................ 13 00
Shipping culls ............................................. 6 00
Workable mill culls........................................ 4 00

"Same widths and lengths as described in basswood, when not otherwise specified; the Chicago rules of inspection to be followed by party of the second part inspecting said stock. All shingles shall be branded with the brand of the G. W. Jones Lumber Co., and each thousand figured on different grades as follows: Extra XAX, $1.70; five-inch clears, $1.10; No. 1's, 40 cents. For all other kinds of lumber, shingles, etc., not herein named, said party of the second part shall figure such prices as they can afford to allow, and based upon the wholesale market price at the time; and any money that said stock of lumber shall amount to, over and above the amounts as above stated of advances, etc., shall be paid to said Rusch Bros. by party of the second part.

"Rusch Bros. agree and bind themselves to keep said lumber clear and free from all legal claims, liens, and incumbrances that may arise through labor on logs and lumber and from other causes. Party of the second part agrees that they will either load out, or else scale up, all of said lumber on or before January 15th, 1901. It is agreed that the parties of the 1st part have the privilege of retailing any stock included in this contract, provided no advances have been made on the same by parties of the second part. It is further agreed that the said parties of the second part are hereby given an option to purchase the stock of lumber of the said parties of the first part for the year 1900–1901, and at prices that'are to be agreed upon at that time. This option is given in consideration of the guarantying by parties of the second part of $5,000 on a certain loan made by said parties of the first part from Lawrence University."

Under this contract the lumber company made large advances to Rusch Bros. The latter cut logs from their own lands, and purchased other logs from settlers; and all these, upon arriving at their mill yard at Wabeno, were scaled and marked "G. W. J."; being the mark or brand of the lumber company. The logs were then sawed by Rusch Bros. at their mill, and the lumber therefrom piled in the yard adjoining the mill, and each pile of lumber marked with the stencil of the lumber company. A part of the lumber had been shipped at the time of the adjudication in bankruptcy of Rusch Bros. The lumber company actually advanced money to the extent of $5,000 or more before logs were delivered at the millyard. The company then or soon after learned that Rusch Bros. were financially worse off, by ten or twelve thousand dollars, than they had represented at the time of the contract. The lumber company, to protect itself, continued to make further advances beyond the requirements of the contract; taking security for any overpayment for the lumber as the advances might exceed the purchase price. The advances were regarded by the parties as advances upon the contract, and the securities taken were general securities for any excess of such advances. Advances were made in money; in supplies furnished; an open account being kept by both parties. Rusch Bros. would also send their notes to the lumber company, which the latter company would indorse and cause to be discounted in part, and would deposit the amount of the note to the credit of Rusch Bros. in the Citizens' National Bank at Appleton. In cases where these notes were discounted, it was so done upon the responsibility of the lumber company. This plan of advancement was contemplated at or about the time of entering into the contract, and it was then agreed that the notes should be taken up by the lumber company, and returned canceled to Rusch Bros., as fast as the lumber values should be ascertained by inspection and measurement at the time of shipment. At the time of the bankruptcy nearly all this paper was in possession of the banks, but before the 15th of December, 1900, had been taken up by the lumber company. It appeared that there had been ad-

vanced by the lumber company in cash and upon notes and upon tax certificates upon the land $52,105.22, of which about $36,000 was represented by Rusch Bros'. notes so delivered to the lumber company and by it discounted; $5,000 representing balances of cash and supply advances, and the remainder represented by securities purchased in to protect the real estate of Rusch Bros. Upon shipment of this lumber it was inspected and measured by both parties, and Rusch Bros. made out a statement of the contents of each car and the total value, giving the number of each car, and sent this statement to the lumber company at Appleton, who thereupon credited the amount in the account of Rusch Bros. Over half a million feet of this lumber was actually shipped before the voluntary assignment of Rusch Bros. on the 10th or 11th of October, 1900, and before the petition in bankruptcy was filed on the 16th of that month. Rusch Bros. during the time of this contract sold at retail about a thousand dollars of lumber, with the actual or tacit consent of the lumber company that they might sell at retail at Wabeno; but it does not appear that authority was given to take for that purpose any lumber actually piled and marked, and the proof was that no lumber thus piled and marked was used for retail purposes.

George P. Miller, for appellant.
L. J. Nash, for appellee.

Before JENKINS and GROSSCUP, Circuit Judges, and HUMPHREY, District Judge.

JENKINS, Circuit Judge. The cause comes properly before us by appeal. The proceeding below was not one "in bankruptcy," as the term is employed in section 25 of the bankruptcy act (30 Stat. c. 541), but was in substance a bill in equity by the trustee against a stranger, of which the court below had jurisdiction by the consent of the appellee, but not otherwise. Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175. The suit was an independent suit in the nature of an equitable replevin, of which we take jurisdiction by appeal, not by virtue of the bankruptcy act, but under the general provisions of the law creating this court. Bank v. Blakey, 47 C. C. A. 43, 107 Fed. 891.

It is urged for error that the decree is faulty because (1) the contract was, in fact and in law, a chattel mortgage; (2) the contract was void as to creditors, because there was no sufficient delivery of possession of the property thereunder; (3) because of the agreement with Rusch Bros. "for the privilege of retailing any stock included in this contract, provided no advances had been made on the same" by the appellee.

Undoubtedly the statute of frauds embraces all methods of disposition of property made with a design to hinder, delay or defraud creditors. The form of the transaction is of no moment if the design to outwit creditors be present. We, however, search this record in vain to find any actual design to hinder, delay, or defraud the creditors of Rusch Bros. The appellee sought to purchase the season's output of the mill. It was necessary for that purpose that advances should be made to enable Rusch Bros. to procure the logs, and to manufacture therefrom the lumber. Large advances were thus made, and, as it would seem, beyond the contemplation of the contract, and because the necessities of the situation, as it developed, showed such advances to be necessary to enable the appellee to obtain the lumber contracted for. In this way the amount of the advances possibly became

greater than the amount of the lumber the appellee could receive under the contract. To secure this amount of advances in excess of the lumber which might be received, security upon other property was from time to time taken. In all this, as we read the facts, there was no design to circumvent the creditors upon the part of either party to the contract. That which was done seems to have been done in absolute good faith as to creditors. The court, which heard the history of the transaction, and had the parties before it, so found. While its finding is not conclusive upon an appellate court, it is persuasive, and is not to be overthrown except upon a showing clearly disclosing error in fact. Harding v. Hart (C. C. A.) 113 Fed. 304. We start, therefore, with the proposition that this transaction, as to intent, was an honest one. If the transaction is to be condemned, it must be because the statute condemns it and places upon it the ban of constructive fraud.

The instrument was not filed as is required of a mortgage when possession of the mortgaged property is not delivered. Rev. St. Wis. 1898, § 2313. Can the agreement in question properly be deemed a chattel mortgage, and within that statute? We think not. It is clear that the instrument upon its face discloses the real intent of the parties to it. It was the design that the title to the lumber should pass absolutely to the appellee. There was reserved to the vendor no right to reclaim the property, and such reclamation under any circumstances was not contemplated. It is essential to a mortgage that there should exist the relation of debtor and creditor. There must be a debt, to secure which the property is hypothecated, upon payment of which in money the mortgaged property may be reclaimed by the debtor. Here there exists no debt, except as the advance might exceed the stated value of the lumber to be delivered, and then only to the amount of the excess. Nor can the fact that the subsequent arrangement by which Rusch Bros. executed their notes to the appellee, which the latter procured to be discounted in its bank, and advanced the proceeds to Rusch Bros., be deemed to create the relation of debtor and creditor, so as to turn this executory contract into a mortgage, and bring it within the condemnation of the statute. The arrangement with respect to those notes seems to have been made at or about the time of the contract, and they were given for the accommodation of the appellee under an arrangement that it would indorse them, and in such way could more readily procure their discount at its bank; that it would take care of the notes at maturity, and upon shipment of the lumber the notes were to be returned to Rusch Bros. We think it clear that all the moneys delivered by the appellee to Rusch Bros. were intended to be, and were in fact, advanced under the agreement, and for the purchase price of the lumber. The instrument is therefore wanting in the essential qualities of a mortgage. Nor was it, in strictness, a bill of sale. There was no property at the time existing upon which it could act. The property was to be produced by means of the advances to be made under the contract. It was to be brought into being through the labor contracted to be performed. It was an executory contract to manufacture lumber from logs to be cut from lands held under contract or to be pur-

chased; the necessary advances of money to procure the logs to be furnished by the appellee. We think it clear that the court below correctly interpreted the contract.

It is claimed, however, that even under such construction the contract is void as to creditors under section 2310, Rev. St. Wis. 1898, which reads as follows:

"Every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things sold or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor or the creditors of the person making such assignment or subsequent purchasers in good faith; and shall be conclusive evidence of fraud unless it shall be made to appear on the part of the persons claiming under such sale or assignment that the same was made in good faith and without intent to defraud such creditors or purchasers."

It may be doubted whether the statute has application to an agreement of this sort, where the thing to be delivered is first to be manufactured; for, as was well said by counsel, there can be no immediate delivery of goods yet to be manufactured. The purpose of the statute is clear. It is that one concerned with the property, either as creditor of or purchaser from the vendor, shall not be deceived; shall not be led to deal in respect thereto with one clothed with the possession and ostensible ownership, when the actual ownership is in another. The reason of the rule would seem to fail of application in the case of an article to be made. The statute seeks, as we think, to prevent sales of property in esse by the owner, he retaining possession, and so being clothed by the purchaser with the indicia of ownership. It sought to strike at secret transfers of property, which are mere devices to defraud, and to that end attached a presumption of fraud to all transfers not accompanied by immediate delivery and followed by actual and continued possession. Therefore, as a general rule, the possession of the vendee must be exclusive of the vendor, and not concurrent with him. Still, when that has been done which shows a bona fide intention to transfer the actual title, it is not forbidden to the vendee to assist in the care and management of the property sold; the change of ownership being properly manifested.

If, however, contracts such as the one before us can properly be said to be within the statute, we are brought to the consideration of the question of delivery. All personal property is not capable of the same sort of possession, and delivery of the possession is such as the nature and character of the property will admit. If actual delivery be not practicable, constructive or formal delivery is sufficient. In all such cases the law takes cognizance of "the character of the property, the nature of the transaction, the possession and relation of the parties to the sale, and the intended use of the property." Thus formal delivery is sufficient where actual delivery is injurious or impracticable. Familiar instances are found in the case of a ship at sea, where immediate delivery is impossible; hides in a vat and paper in a mill in process of manufacture, where delivery means destruction of, or great damage to, the articles; or ore or coal,

where immediate removal would be attended with waste and expense. In all such cases the law demands only such public evidence of transfer of title as is possible in the nature of the transaction. Thus it is stated in Missinskie v. McMurdo, 107 Wis. 578, 582, 83 N. W. 758, 760:

"The delivery and possession contemplated by this statute is not that technical delivery which gives validity inter partes to a contract of sale, in compliance with section 2308 (Rev. St. 1898), but is such a delivery and change of possession that those familiar with the situation would naturally draw the inference of a change of ownership. The purpose of section 2310 is to require that parties who transfer property shall accompany the transfer by the public indicia of such change, and that, if such indicia are absent, they must be prepared to establish the bona fides of the transaction. Bank v. Rugee, 59 Wis. 221, 226, 18 N. W. 251; Schneider v. Kraby, 97 Wis. 519, 73 N. W. 61."

Here there was all the delivery possible under the circumstances. It was necessary that the logs should be delivered upon the grounds of Rusch Bros. and at their mill, for they were there to be made into lumber. These logs were branded with the brand of the appellee, which was all that could be done to indicate title. Such well-known indicia of ownership gave notice to the world that the logs were not the property of Rusch Bros. The lumber produced from the logs was piled upon the mill ground for shipment, and each pile was marked with the stencil of the appellee. What more could be done to indicate ownership? We think that there was here all the delivery possible under the circumstances, and sufficient to meet the demands of the statute.

If, however, we are therein mistaken, and the statute demands an immediate and permanent change of possession, still the want of it raises only a presumption of fraud, which may be rebutted by showing that the sale "was made in good faith and without any intent to defraud." It has been held that such presumption is overcome by proof of payment of full consideration. Plow Co. v. Hanthorn, 71 Wis. 529, 37 N. W. 825; Cook v. Van Horne, 76 Wis. 520, 526, 44 N. W. 767; Commission Co. v. Shong, 98 Wis. 380, 74 N. W. 114. There can be no question here of payment of full value for this property, and of the entire good faith of the parties to the contract.

It is also urged that the contract is void because of the clause therein giving to Rusch Bros. "the privilege of retailing any stock included in this contract, providing no advances have been made on the same," and of the supposed assent of the appellee to retail sales of the lumber to the amount of $1,000; and this under section 2306, Rev. St. Wis. 1898, which provides:

"All deeds of gift, all conveyances and all transfers or assignments, verbal or written, of goods, chattels or things in action, made in trust for the use of the person making the same, shall be void as against the creditors, existing or subsequent, of such person."

Without doubt, all sales, verbal or written, which give to the vendor the right of possession and of disposition over the property sold, with the intent to defraud creditors, are reprobated in the law. It is, however, difficult to understand that this section can have application to an executory contract of sale of articles to be manufactured. But passing

that question, we are of opinion that there is nothing here to indicate a transfer in trust for the use of Rusch Bros. By the contract the appellee was to have the entire stock of lumber to be cut and manufactured by the mill. The clause in question gives Rusch Bros. the privilege of retailing any of that stock upon which no advances should be made. This reserves to Rusch Bros. and carves out from the general mass the logs and lumber upon which no advances should be made. The contract permitted them to procure logs and cut at their own expense the lumber necessary to supply their retail trade, and this provision qualified the general language of the contract,—"their entire stock" of lumber, to be cut and manufactured. Nor do we think that the subsequent acts of the parties under the contract indicate a different agreement. It is true, the advances after a time became general, and not specific, as contemplated, and in the end probably exceeded the total value of the lumber which the appellee could obtain under the contract; but it is not shown that retail sales were permitted to be made from lumber made from any logs upon which appellee had advanced, or from any pile of lumber marked with the stencil of the appellee. The testimony of Mr. Jones, upon which the appellant largely relies does not, as we think, taken as a whole, indicate any agreement other than that expressed in the contract. The charge by the appellee of 20 per cent. of the retail sales, while possibly unwarranted, was not in pursuance of any agreement, but was a charge subsequently made, and after more moneys had been advanced, as the appellee supposed, than it could possibly receive from the lumber manufactured. The court below we think properly characterized the transaction as one neither harmful to creditors, nor so intended. We recognize the rule that intent bona fide or mala fide is immaterial to an instrument per se fraudulent and void in law. The fraud which the law imports to it is conclusive. Blakeslee v. Rossman, 43 Wis. 123. But we do not think the rule applicable to the instrument in question.

The decree must be affirmed.