### GUARANTY TITLE & TRUST CO. v. PEARLMAN.

(District Court, W. D. Pennsylvania. March 13, 1906.)

#### No. 3.

1. BANKRUPTCY—RECEIVER—RIGHT TO SUE.

Bankr. Act July 1, 1898, c. 541, § 2, cl. 3, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3421], authorizes the appointment of a receiver by a court of bankruptcy, in case it is necessary for the preservation of the estates for the court to take charge of the property of the bankrupt after the filing of the petition, and until it is dismissed or the trustee is qualified. Held, that a receiver appointed under such section has only power to take charge of the visible property of the bankrupt and preserve it as a custodian until the appointment of a trustee, and is without power to sue to set aside an alleged fraudulent transfer of the bankrupt's property.*

2. FRAUDULENT CONVEYANCES—CREDITOR'S SUIT—WHEN MAINTAINABLE.

Act Pa. March 28, 1905 (P. L. 62), provides that certain sales of personal property in bulk and out of the ordinary course of business shall be void as to creditors, unless certain requirements are complied with, and authorizes the maintenance of a suit to set the same aside within 90 days. Held, that where it was impossible for creditors to pursue their claims to judgment and execution against the property alleged to have been transferred in violation of such act within the time specified, any creditor was entitled to file a creditor's bill on behalf of himself and others to set aside such transfer.

3. BANKRUPTCY—CREDITOR'S SUIT.

Where it was impossible for creditors to pursue their claims to judgment and execution against the property alleged to have been transferred in violation of Act Pa. March 28, 1905 (P. L. 62), within the time specified by such act, any creditor was entitled to file a creditor's suit on behalf of himself and others to set aside such transfer, either before or after bankruptcy proceedings against the debtor.

Charles H. Sachs, for demurrer.
John M. Ralston, for opposed.

ARCHBALD, District Judge.† This is a bill to set aside as fraudulent a sale of merchandise, in bulk and out of the ordinary course of business, made to the defendant in June last. On or about March 1, 1905, the bankrupts, M. Burke & Co., leased a store in Pittsburgh for the ostensible purpose of carrying on a furniture and household furnishing business; and representing that they had this in view, and having made a show of means, by opening an account in bank and depositing some $7,390 in cash and notes, they placed a large num-

*See Royal Insurance Co. v. Miller, 199 U. S. 353, 26 Sup. Ct. 46, 50 L. Ed.——.

†Specially assigned.

ber of orders, with various jobbing houses in different parts of the country, from whom they secured large quantities of goods on credit. Some $5,000 worth of these, instead of putting into their business, they placed on storage in a warehouse in Allegheny City; and, on or about April 1st, one Morris Horn, a furniture broker, made sale of the same to the defendant, Morris H. Pearlman, who took possession of and now holds them. This sale, as it is averred, was made by Horn, on behalf, and as agent of, the bankrupts; and being a sale in bulk, and out of the ordinary course of business, and not being accompanied by the notice and formalities required by the Pennsylvania act of March 28, 1905 (P. L. 62), was fraudulent, and void as to creditors. Involuntary proceedings were instituted in this court against M. Burke & Co., April 14, 1905; and the same day the complainant was appointed receiver and authorized to take charge of the property of the bankrupts, and to institute and defend suits with regard to the same. The bankrupts having absconded immediately after the sale, an adjudication was not secured against them until June 19th, and a trustee not being able to be chosen until some time after that, and the 90 day limit, within which, according to the Pennsylvania statute, proceedings to set aside the sale had to be taken, having nearly expired, the receiver, on June 26th, filed the present bill on behalf of the estate. It is demurred to by the defendant on two grounds: (1) Because the receiver had no authority in law to sue; and (2) because the act of Assembly with regard to bulk sales, upon which it is founded, is unconstitutional.

The right of a receiver to sue to recover the property of a bankrupt was carefully considered in Boonville National Bank v. Blakey, 6 Am. Bankr. R. 13, 107 Fed. 891, 47 C. C. A. 43, and little can be profitably added to what there appears. In holding that he had no such right, it is pointed out, that the authority to appoint a receiver in bankruptcy is purely statutory, and that he possesses in consequence only such powers as the statute in terms confers (Act July 1, 1898, c. 541, § 2, cl. 3, 5, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3421]), or as are fairly to be deduced therefrom. The sole purpose of a receiver is to take charge of and preserve the estate until a trustee can be chosen and qualified (Section 2, cl. 3, section 3e, 30 Stat. 545, 546 [U. S. Comp. St. 1901, pp. 3421, 3423]) ; the alternative provision being to put the property into the custody of the marshal (section 69, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]). No title is acquired by either, and none in fact passes from the bankrupt until there has been an adjudication, and when it does, it vests as of that date, by operation of law, in the trustee, after he has been chosen and qualified. It is he, who, by the express provision of the statute, in case of fraudulent transfers and voidable preferences, is to sue for and recover the property (section 67e and section 70e, 30 Stat. 564, 566 [U. S. Comp. St. 1901, pp. 3449, 3452]), and the right to do so, being dependent on the statute, is necessarily exclusively in him. It is said, however, that the bankruptcy courts are invested (section 2) "with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings;" and that they are expressly

authorized (clause 15) to "make such orders, issue such processes, and enter such judgments in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this act;" under which, it is claimed, they have the power to appoint a receiver, with the general authority of a receiver in chancery, including the right to sue where that is necessary. Collier (5th Ed.) 18. But it never was intended, by what is so referred to, to confer general equity powers, but only such as are necessary to enforce and carry out the provisions of the act, that, in so many words being what is said. And, authority to appoint a receiver under certain conditions having been conferred, none can be implied outside of and beyond this, which would make the other superfluous and unnecessary.

It is contended, that the right of a receiver to sue, if specially authorized by the court which appointed him, was recognized in the case of the National Mercantile Agency, 12 Am. Bankr. R. 189, 128 Fed. 639. But the fact is it was not passed upon. The receiver there was appointed by the District Court for the Southern District of New York, and brought suit in the Eastern District of Pennsylvania; and the bill was dismissed upon the ground that no authority had been given him, in the order appointing him, to sue in his own district or elsewhere. This was necessarily controlling, and was properly so regarded, nothing else being considered. It falls far short of deciding, however, that the order would have been effective, if made. Much more to the point is the case of In re Fixen, 2 Am. Bankr. R. 822, 96 Fed. 748, where the authority of the receiver was expressly sustained. But for the reasons already stated, I am not able to give my adherence to that view.

It is further urged that unless power to sue is possessed by the receiver in a case of this kind there will be a miscarriage of justice, the Pennsylvania statute requiring that proceedings to invalidate a sale in bulk, such as the one that is here complained of, shall be brought within 90 days from its consummation. But assuming this to be the case, it affords no argument for the existence of the power, unless it is otherwise deducible. Even if there be this lapse in the law, we are not authorized, out of mere necessity, to raise up something to cover it. The truth is, however, that there is no such difficulty as is assumed. A sale of the character of that in question is made fraudulent and voidable by the local law as against creditors, and creditors therefore have the right themselves to take steps to avoid it. Ordinarily this would be by judgment and execution against the property alleged to have been fraudulently disposed of, upon a sale of which the purchaser would be in shape to test the title of the alleged fraudulent vendee. But in requiring proceedings to be begun within 90 days after the consummation of the sale, of necessity something more direct and speedy is contemplated; it being practically impossible within that time, to bring action and obtain judgment in order to do so. Neither would an attachment lie, under Act Pa. 1869, the fraud which justifies it having to be actual, and not merely constructive. Stowers Pork Packing Co. v. Shoener, 15 Pa. Dist. R. 141. Under the circumstances, the only relief available to general creditors is by bill,

and this must therefore be regarded as intended to be given. House-man v. Crossman, 177 Pa. 453, 35 Atl. 736. And if this be so any creditor would be entitled to sue on behalf of himself and others, either before or after the institution of proceedings in bankruptcy, such suit if after being ancillary thereto, no trustee having yet been chosen. In re Schram, 3 Am. Bankr. R. 352, 97 Fed. 760.

This remedy being open, the argument drawn from the necessity for authority on the part of a receiver to sue is effectually disposed of. Without going, therefore, into the question of the constitutionality of the statute, the demurrer is sustained, and the bill dismissed, with costs.