## In re BENDER.

(District Court, W. D. Arkansas, Ft. Smith Division. March 23, 1901.)

BANKRUPTCY—MARSHAL'S SEIZURE OF PROPERTY—MOTION TO RETURN.

Where property in possession of a bankrupt was surrendered as his property, without a protest, to the marshal claiming it under an order of seizure pursuant to Bankr. Act, cl. 3, § 2, and Id. § 69, authorizing such order, if shown to be necessary to preserve the estate, a mortgagee thereof, of whose claim thereto the marshal only had constructive notice, resulting from the record of the mortgage, cannot appear specially, and by a mere summary motion have the property returned, title in the bankrupt being asserted.

In Bankruptcy.

Mechem & Bryant, for the motion.
Ira D. Oglesby and Ben. T. Du Val, for the receiver.

ROGERS, District Judge. On the 2d day of February, 1901, a petition in bankruptcy was filed against John D. Bender, alleging, in substance, that John D. Bender is insolvent, and that within four months next preceding the date of this petition the said Bender committed an act of bankruptcy, in that he heretofore, to wit, on the 8th day of October, 1900, caused to be placed upon record in Sebastian county, Ark., mortgages given by him a short time previous thereto, securing certain of his creditors, and giving them a fraudulent preference over other creditors, he being at the time insolvent, as he and said creditors well knew. A proper service was had upon this petition. Two other petitions had also been filed prior thereto, and service had thereupon. On the 12th of March, no defense having been interposed, the petitions were consolidated, and John D. Bender adjudicated a bankrupt. On the 12th of March an affidavit was filed by Ira D. Oglesby, attorney for the petitioning creditors, alleging, in substance, that he had filed a bond for the seizure of said bankrupt's personal property, and that said bankrupt had committed an act of bankruptcy by fraudulently disposing of his property, and was neglecting his property so that the same was liable to waste and deterioration in value, and to be improperly disposed of, and praying the court for a warrant of seizure. An order of seizure was, on the same day, issued, directing the marshal of said district to seize and take possession of all the estate, real and personal, of said John D. Bender, and all his deeds, books of account, and papers, and to hold and keep the same safely, subject to the further order of the court. By virtue of this writ, the marshal went to the saloon of the said bankrupt, found the defendant there in actual control of his saloon, and served the process upon him. Said Bender thereupon voluntarily gave him the keys, and surrendered the property, without protest, or without making known to the marshal that there were any claims whatever upon it, or without stating to him that he was in possession of the property as the agent of the said D. J. Young. The marshal thereupon took possession of the property, and is still in possession thereof as the property of the bankrupt. On the 15th of

March, D. J. Young specially appeared, and filed his motion to have the property so seized by the marshal turned over to him, alleging that he was the owner and entitled to said property seized by virtue of a mortgage executed to him by the said bankrupt on the 18th of September, 1900, which mortgage was duly acknowledged and filed for record as required by the laws of Arkansas. He exhibits a certified copy of said mortgage with his motion, and states that he was in actual possession of said property by his agent, John D. Bender, empowered as such by said mortgage, at the time that said property was seized by the marshal of this court. The petitioning creditors filed an answer to this motion, denying that Young was the owner, or that he was in actual adverse possession of the property by his agent, Bender, at the time the same was seized, and alleging that the property was in the possession of Bender at his usual place of business, and that he was there exercising the claim and right of ownership, dealing with and disposing of the same as his own property, he being in truth and in fact the legal owner thereof; that Bender was found in possession of the property, and delivered the same to the marshal without protest, and without any claim or pretension that said property, or any part thereof, belonged to said Young, or that he was in possession thereof, or any part thereof, as the agent of Young. The creditors also say that Young is not entitled to the possession of said property by virtue of the mortgage filed with his motion, alleging that said mortgage is fraudulent and void, and was executed by Bender to Young for the purpose of hindering, delaying, and defrauding the creditors of the said Bender; that Young knew, when he took the mortgage, that Bender was insolvent, and that the mortgage was given and received for the purpose of giving Young a preference over other creditors, and for the purpose of enabling Bender, under its guise and protection, of converting the property mentioned into money, so that he might place the same beyond the reach of his creditors; and that said mortgage was given by said Bender and received by Young in order that Bender might defraud his creditors; that it was not executed in good faith, but was intended to prevent the creditors of Bender from reaching the property by legal process; also denying Young's right to the possession of the property, and denying that it was taken out of the possession of his agent, and affirming that at the time it was so taken it was in the actual possession of the bankrupt as his property, at his place of business, where he was using, selling, and controlling the same as his own. The proof shows that when the marshal approached the saloon Bender was sitting outside on the street, having his shoes shined, and, upon being served with the process, he said to the marshal that he supposed that he wanted the keys, to which the marshal replied in the affirmative. Thereupon Bender gave him the keys, and the marshal took charge of the store. There is no evidence in the case that the marshal knew anything about any claim of Young, or that Bender was the agent of Young, or that he was in possession of it as Young's agent, or that Young had any interest in it. The evidence showed that Bender was in possession of the goods seized as Young's agent

under the mortgage, and was accounting for the daily sales to Young.

The question now arises whether or not the property, not having been forcibly taken from Bender, but having been, without protest, surrendered by Bender to the marshal as his assets, on a summary motion Young should have the property returned to him. It is urged by the counsel for Young that the principles decided in Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, are decisive of the question at issue. I have concluded otherwise. In my opinion, that case has no bearing whatever upon the controversy at issue. The question presented was entirely different. In that case a suit was brought in the district court of the United States for the Northern district of Iowa, sitting in bankruptcy, by Fred Bardes, a citizen of Iowa, as trustee in bankruptcy of the estate of Frank T. Walker, against the First National Bank of Iowa, a corporation created and existing under the act of congress relating to national banks, and against citizens of Iowa and South Dakota, to set aside a conveyance of goods alleged to have been made by the bankrupt within four months before the institution of the proceedings in bankruptcy to the defendants, and to compel them to account for the goods, or their proceeds, on the ground that the conveyance was in fraud of the provisions of the bankrupt act of July, 1898, and in fraud of the creditors of the bankrupt. The question was simply whether the district court of the United States sitting in bankruptcy had jurisdiction of such a suit. It was answered in the negative. It being the first case in which the court had been called upon to construe the provisions of the bankrupt law with relation to the jurisdiction of the district courts sitting in bankruptcy, a somewhat elaborate opinion, discussing the various sections of the bankrupt law, was delivered; but there was really no other question before the court except the one I have stated. That question turned upon section 23 of the bankrupt act, which is in the following language:

"Sec. 23. Jurisdiction of United States and State Courts.—(a) The United States courts shall have jurisdiction of all controversies at law and in equity as distinguished from proceedings in bankruptcy between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted, and such controversies had been between the bankrupts and such adverse claimants.

"(b) Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant."

It will be seen that paragraph "a" of section 23 relates to the jurisdiction of the circuit court of the United States in suits "between trustees as such and adverse claimants, concerning property acquired or claimed by the trustee." The words "acquired or claimed" the court regards as synonymous. both alluding to property adversely held by third parties, but which, by the terms of the bankrupt act, became vested in the trustee upon his qualification as such. Paragraph "b," as the supreme court held, precludes the district courts of the United States sitting in bankruptcy from taking jurisdiction of

suits brought or prosecuted by the trustee, except such suits as the trustee might have brought or prosecuted if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant. Both of these paragraphs, if carefully analyzed, show they relate to suits brought and prosecuted by trustees against third persons for property claimed by third persons by reason of conveyances or assignments made before the bankruptcy proceedings were instituted. That, of course, is not this case, because the trustee is not bringing any suit in this case. On the contrary, it is the receiver of the court that is in possession of the property, under an order of the court, having acquired the same without the use of any force, without any protest of the bankrupt that the property was not his, and without any actual knowledge that anybody else had a claim upon it. In other words, the seizure was peaceable, without force, and made at the time as the property of the bankrupt. The property in this case was seized under clause 3, § 2, and section 69 of the bankrupt act. Clause 3 of section 2 is as follows:

"That the courts of bankruptcy as herein defined * * * are hereby invested * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, in vacation in chambers, and during their respective terms, as they are now, or may be hereafter held to * * * (3) appoint receivers or the marshals upon application of parties in interest, in case the court shall find it absolutely necessary for the preservation of estates to take charge of the property of bankrupts after the filing of the petition and until it is dismissed, or the trustee is qualified."

And section 69 provides as follows:

"The judge may, upon satisfactory proof, by affidavit, that a bankrupt against whom an involuntary petition has been filed and is pending, has committed an act of bankruptcy, or has neglected, or is neglecting, or is about to so neglect his property, that it has thereby deteriorated or is thereby deteriorating, or is about thereby to deteriorate in value, issue a warrant to the marshal to seize and hold it, subject to further orders."

The precise action provided for by the portions of the bankrupt law above quoted is the very action that was taken in this case, and the supreme court of the United States, in Bardes v. Bank, supra, say:

"The powers conferred on the courts of bankruptcy by clause 3, of section 2, and by section 69, after the filing of the petition in bankruptcy, and in case it is necessary for the preservation of the property of the bankrupt to authorize receivers or the marshals to take charge of it until a trustee is appointed, can hardly be considered as authorizing a forcible seizure of such property in possession of an adverse claimant, and have no bearing upon the question in what courts the trustee may sue him."

While that precise question was not before the court in that case, and possibly the statement should be regarded as obiter, yet it is highly persuasive, and in this case entirely so, of what is the proper construction of the provisions above quoted. In the case at bar, however, there was no forcible seizure of the property. The seizure was without force, without protest, without even the suggestion that there was a mortgage upon the property, or that it was claimed by any other person. It was found in the possession of the bankrupt.

It was turned over to the marshal under an order of seizure directing him to levy upon the bankrupt's property, and upon the property of no other person. It was, therefore, received by the marshal as the bankrupt's property, and is in his custody as such. It must be conceded that, if the marshal had been advised, or had known, that the property in this case was covered by a mortgage in favor of the moving creditor, D. J. Young, and if his agent in actual possession had protested that the marshal had no right to seize it, or had given him notice that he was holding the property adversely as the agent of Young, and not in his own right, the marshal would not have been authorized, under the order of seizure, to have forcibly taken the property from his possession; but, on the other hand, where the property is found in possession of the bankrupt, and upon being served with a copy of the order of seizure he quietly and peaceably, and without protest, delivers the keys, and turns over the property to the marshal, giving him no notice of outstanding liens, or the nature and character of his possession, that the property goes into the possession of the marshal as the assets of the bankrupt, and that all persons who desire to claim the possession of such property must go into the bankrupt court, and set up their claim therefor. This conclusion is not in contravention of any case cited. In the case of In re Cohn, 3 Am. Bankr. R. 421, 98 Fed. 75, the property was turned over by Lena Williamson under the order of the referee, she being a witness called by the creditors for the bankrupt, upon threat of imprisonment for omission to produce them, so that the seizure was a forcible one in that case. And in Re Abraham, 2 Am. Bankr. R. 266, 35 C. C. A. 592, 93 Fed. 767, the marshal was expressly directed by the order of the court to take from Davidson, who was the assignee of Abraham, property then in his possession, and which he claimed to have purchased. It was a simple proceeding, devesting Davidson of property which he claimed as his own, on the ground that the sale or assignment of it to him by Abraham, the bankrupt, was fraudulent as against his creditors. It was, therefore, a forcible seizure of the property. And no case which has been cited or suggested reaches the precise question in this case, where the marshal, under the order of the court directing him to seize the estate of the bankrupt peaceably and quietly, and without protest, becomes possessed of property as the property of the bankrupt which is subsequently claimed by a third person. It is a matter of everyday practice, where the marshal is called upon to seize the assets of a bankrupt, that he in this way becomes possessed of articles of property which do not in fact belong to the bankrupt; and the uniform practice in these cases is for the owner of the property to apply to the bankrupt court for its possession, and orders are made causing the same to be delivered; but I have found no case where there is a dispute as to the title of the property thus in the hands of the marshal or of a receiver of the court, concerning which there is a controversy as to the title and right to the possession, in which the courts have, on mere motion, required the property to be returned to the person claiming it, and thereby compelling the trustee to institute suit in a court of proper juris-

diction for the recovery thereof. If it be said that the record of the mortgage was notice to the marshal, the answer is, conceding that to be true, still the goods were not forcibly seized, or seized as the goods of Young, but were voluntarily surrendered by Young, or, strictly speaking, by his agent, as the goods of the bankrupt. If the marshal had received actual notice of Young's mortgage, nevertheless, when Young, by his agent, surrendered the goods without protest, the marshal might very well have concluded that Young conceded the invalidity of his mortgage under the bankrupt law, as is often the case, and therefore might have properly taken possession of the goods as the property of the bankrupt. So that the constructive notice given the marshal by the record of the mortgage in no wise affected the result where the goods are not forcibly seized, but are voluntarily surrendered, or surrendered without protest, or willingly, no adverse claim having been disclosed or asserted to the marshal. Undoubtedly, the bankrupt court had jurisdiction to issue the order it did, and, in pursuance of the writ, the marshal had authority for seizing all goods of the bankrupt not adversely held by third parties, and of receiving all goods in the hands of third parties voluntarily surrendered to him as the goods of the bankrupt, because in the latter event no disclosed or asserted right of third parties is invaded, no forcible seizure is made. These goods, being in the custody of the bankrupt court under such circumstances, cannot be reached by a summary motion in cases where title in the bankrupt is asserted, but the claimant must be remitted to a plenary action in some court of competent jurisdiction to try the title. The claimant might, no doubt, intervene in this court, and have the question settled; but he has not elected to submit himself to its jurisdiction, and cannot be compelled to do so. The motion is therefore overruled, without prejudice.