## In re J. C. WINSHIP CO.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1903.)

### No. 924.

1. BANKRUPTCY — CLAIMANT OF PROPERTY — EFFECT OF COMPOSITION WITH CREDITORS.

A corporation against which a petition in involuntary bankruptcy had been filed, on which a receiver was appointed, effected a composition with its creditors, which was confirmed by the court, and carried out, leaving in the custody of the court certain personal property, which was in controversy between the receiver and one claiming the same as a lessor of the corporation under a lease which the receiver claimed was void as against creditors under the state statute as a secret lien. No adjudication of bankruptcy was made, or trustee appointed. *Held* that, whatever the rights of the lessor petitioner, as against creditors, it was entitled to the property on the consummation of the composition, leaving no other claimant except the alleged bankrupt, which could not assert the rights of its creditors whose claims had been extinguished.

2. SAME—RIGHT TO PROPERTY IN CUSTODY OF COURT—PROCEEDINGS TO DETERMINE.

The question of the right to property or funds in custodia legis is one which the bankruptcy court may summarily determine without the formality of technical pleadings.

Appeal from the District Court of the United States for the Northern District of Illinois.

A petition in involuntary bankruptcy against the J. C. Winship Company, a corporation, was filed November 1, 1901, and on the same day a receiver was appointed, who took possession of the property of the bankrupt, including three printing presses, the subject of contention here. On November 7, 1901, Walter Scott & Co., the present appellant, petitioned the court that the receiver return to it the three printing presses which had been delivered by it into the possession of the J. C. Winship Company under a lease between the petitioner and the bankrupt, dated August 1, 1899, by which they let and hired for use to the bankrupt the three printing presses mentioned for the term of 51 months, commencing October 25, 1899, and ending January 25, 1904, upon the rental for the term stated of $10,100, which was the full value of the presses at the time, and was payable in certain installments stated, and for which the notes of the lessee were taken; the right of the lessor being preserved, in case of default in payment of any of the installments, to re-enter into the possession of the printing presses, which were not to be removed by the lessee from its place of business without the written consent of the lessor. The lease provided for surrender of the property at the end of the term, the presses to be insured by the lessee, the policies being payable to the lessor, and deposited with it. The lease provided in terms that it was not to be, and in fact it was not, recorded. The return was demanded upon a showing of failure to pay certain installments of rent specified in the lease. The receiver answered the petition to the effect that the instrument of lease was executed for the purpose of creating and preserving a secret lien upon the property in favor of Walter Scott & Co. and in fraud of the creditors of the bankrupt; that the transaction was in fact a sale to the bankrupt; that the instrument of lease is, in effect, a chattel mortgage, and void, and that the J. C. Winship Company had been in the open and notorious possession of the presses from the date of delivery to it. The matter of the intervening petition was referred to a master, who heard testimony thereon, and reported on December 14, 1901, that the lease, so called, was given with a design on the part of the parties thereto to give a secret lien to the petitioner, which is not countenanced by the laws of the state of Illinois; that it was not a lease in fact, but was, in effect, a chattel mortgage, and was void as to creditors. On December 14, 1901, the court entered an order overruling the exceptions filed to the master's report; from which an appeal was taken by the petitioner to this court, where the appea

was dismissed as premature, the order overruling the exceptions being held to be interlocutory, and not final. Walter Scott & Co. v. Wilson (C. C. A.) 115 Fed. 284. On December 4, 1901, the court entered an order in the bankruptcy proceeding directing the receiver to advertise for sale all the right, title, and interest of the receiver in the assets of the bankrupt then in his possession, the bids to be submitted to the court on the 14th of December following. The special master to whom was referred the matter of the bids and the sale thereunder, on December 16, 1901, reported the appraised value of the plant to be $18,180.01; that the three presses in controversy here were included in that appraisement; that the best bid which he had received was from one Frederick S. Hebard for the assets included in the appraisement, the sum of $15,500, $10,500 of which to be paid absolutely, and $4,500 to be deposited with the receiver in payment of the three Scott presses in controversy, to be refunded by the receiver in the event the three presses should be determined on appeal not to be the property of the receiver; and he thereupon made sale to Hebard of the assets upon the terms stated, subject to the approval of the court. On December 16, 1901, the court confirmed the sale as stated, and entered an order that if, upon final appeal, the prayer of the petitioner Walter Scott & Co. should be granted, the purchaser should return the three presses described in the petition to the receiver, or to the trustee thereafter to be chosen, and the sum of $4,500 paid therefor should be returned to the purchaser, which sum was ordered to be held to await the determination of such appeal by Walter Scott & Co. Afterward, on April 22, 1902, a composition offered by the bankrupt was accepted by a majority in number of its creditors whose claims had been allowed, and of such allowed claims, and the amount of money required by law to be deposited was deposited as designated by the judge of the court, and subject to his order, and it was decreed that the composition be confirmed. The composition was carried into effect, and the creditors whose claims had been filed and allowed were paid according to the terms of the composition; and on April 30, 1902, upon a showing to that effect, the bankruptcy court ordered that the clerk return the balance of the composition fund remaining in his hands to the bankrupt. On May 12, 1902, the court ordered that the $4,500 so held by the receiver be retained by him, and not paid over to the bankrupt. On the 13th of May, 1902, the mandate of this court dismissing the appeal of Walter Scott & Co. was filed in the bankruptcy court, and thereupon Walter Scott & Co. asked leave to file a supplemental petition for an order vacating the order of December 14, 1901, overruling the exceptions to the referee's report upon the original petition, and for a rehearing of the matter, upon the ground that the bankrupt had compounded with his creditors with the approval of the court, and they had been satisfied; that certain of the funds paid in by the bankrupt to effect the composition had been ordered returned to it; that the sale of the bankrupt's assets had not been consummated with respect to the printing presses claimed by petitioner, and that they were still subject to the order of the court; and that, as against all parties at present interested in the subject-matter, the petitioner was legally and equitably entitled to immediate return of the possession and control of the property mentioned; and that neither the receiver nor the bankrupt, as against the petitioner, had any claim whatever to the possession and control of the printing presses. On July 30, 1902, the court denied leave to file the supplemental petition, overruled the petition for a rehearing of the original order, and decreed the dismissal of the original intervening petition. No adjudication of bankruptcy was made in the cause, and no trustee appointed. From the decree of July 30, 1902, Walter Scott & Co. appeal to this court.

James F. Hutchinson and John A. Henry, for appellant.

Geo. H. Peaks, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge, after stating the facts, delivered the opinion of the court.

The questions argued at the bar or suggested by the record are interesting, and of moment to the profession and to the administra-

tion of the bankruptcy law. These are: (1) Whether the lease, so called, of the printing presses, can be impugned, and shown to be in effect but a chattel mortgage. (2) Whether, if to be considered a chattel mortgage, and void as to creditors for failure to record it, the transaction may be attacked by any one other than a purchaser in good faith or an execution or attaching creditor. (3) Whether an adjudication of bankruptcy is such a sequestration of the property of the bankrupt that it clothes the trustee and general creditors with the rights of execution or attaching creditors or of a bona fide purchaser; and therein, incidentally, whether the trustee could avoid the instrument in favor of the general creditors, or only of execution or attaching creditors. (4) Whether the filing of a petition in bankruptcy in the absence of adjudication and appointment of trustee works such sequestration, so that a receiver can assert the rights either of general or of execution or attaching creditors.

The considerations which constrain our judgment render unnecessary, at this time, a determination of the important questions suggested. The property in dispute passed to the possession of the receiver. It is in custodia legis. The court, whether one of common law, of equity, of admiralty, or of bankruptcy, having such possession, has the right, and it is its duty, to restore that possession to whomsoever it lawfully belongs. No determination of that question was made by the court below until this decree of July 30, 1902. Prior to that time a sale had been made by the receiver under the order of the court of the property of the alleged bankrupt, as recited in the statements of facts, which authorized the sale of "the right, title, and interest of the receiver" in the three printing presses, subject, however, to the final determination by this court of their ownership. The purchaser bought with knowledge of the situation, and was carefully protected against loss by provision in the order confirming the sale that he should return the presses if so directed, and receive from the court the amount of his bid, which was and is retained by the court. Prior, also, to this decree of July 30, 1902, the alleged bankrupt compounded with his creditors as provided by the act (30 Stat. c. 541, § 12 [U. S. Comp. St. 1901, p. 3426]). The composition was confirmed by the bankruptcy court, which act discharged the debts (30 Stat. c. 541, § 14c [U. S. Comp. St. 1901, p. 3427]), and all creditors who had proved their claims received the amount to which they were entitled. There was then no one before the court but the receiver, the appellant, and the alleged bankrupt. The property remaining, with the exception of the three printing presses, or the amount bid therefor, had, by order of the court, been returned to the alleged bankrupt. The creditors had ceased to have any interest in the estate, and the question remaining for determination by the court was with respect to the disposition by the receiver of the three printing presses, or the amount bid for them. Either the appellant or the alleged bankrupt was entitled. The receiver had no interest. He was a mere care-taker. He had no title. "If in any sense a trustee, he is trustee for the bankrupt, in whom is the title to the property until it passes by operation of law, as of the date of adjudication, to the trustee selected by the creditors." Bank v.

Blakey, 47 C. C. A. 43, 48, 107 Fed. 891. There was here no adjudication of bankruptcy, no passing of title by operation of law. The title remained in the alleged bankrupt, the possession of the property in the court. The contention here for the possession of this property is manifestly between the appellant and the alleged bankrupt. Beyond all controversy, as between these two parties the appellant is entitled to the property. The instrument in question, whether it be deemed a lease or a chattel mortgage, placed the title to the printing presses in the appellant. Assuming—but not deciding —that it could have been avoided by general creditors, it was valid between the parties. It would be mockery of justice to say that the alleged bankrupt may claim through and in the right of creditors whose debts have been paid and discharged; that he may avoid a transaction, valid as to himself but voidable as to creditors, in the right of nonexisting creditors. The court below proceeded upon the theory that the appellant could not avail itself of the fact of composition with creditors, and is only entitled to be placed in the position it would have occupied had the decree dismissing the original petition been entered at the time of the overruling of the exceptions to the master's report. Therein we think the court erred. Having this property in possession, with no claim upon it except that of the appellant and the alleged bankrupt, the question arose as to its disposition by the court at the time the decree was actually entered; not what the rights of the appellant might have been at the time of the report of the referee, when there were creditors before the court. The question is not one of technical pleading. It is one concerning the disposition of property in custodia legis, taken for the benefit of creditors, and which it was no longer necessary to hold for them. It is a question whether the alleged bankrupt, having compounded with its other creditors, should be permitted to assert their rights to enable it to defraud the appellant out of property held under an instrument valid as between the parties thereto. It is a matter to be determined by a summary showing of the situation, and no technicality should be permitted to intervene to prevent a just determination of that question. The court of bankruptcy is a court of equity. It should have acted sua sponte, the facts being manifest upon its record. If formality was essential, the supplemental intervening petition of the appellant setting forth the facts apparent upon the record should have been allowed to be filed, and should have been effectual to prevent the entry of the final decree dismissing the original intervening petition.

It is suggested by the receiver that the appellant could not determine the lease after default by the lessee, and be entitled to take possession of the property without a tender of the notes representing the rental for the presses. If this be matter of which the receiver can avail himself, it is sufficient to say that by the composition the debt represented by the notes is discharged, or, if otherwise, that the court below, in carrying into effect the mandate of this court, can, as a condition of the return of the printing presses to the appellant, require the surrender of such of the notes as in amount are in excess of the rental accrued and accruing to the date of the final decree to be rendered in pursuance of the mandate.

The decree is reversed, and the cause is remanded, with a direction to the court below to enter a decree, at the election of the appellant, that the three printing presses be returned to it, and that the $4,500 in the registry of the court be returned to the bidder at the sale; or that the appellant, if it shall elect to confirm the sale, be paid the $4,500.