## In re LEEDS WOOLEN MILLS.

(District Court, W. D. Tennessee. April 22, 1904.)

1. BANKRUPTCY—JURISDICTION OF COURT—DETERMINING ADVERSE OWNERSHIP OF PROPERTY.

The fact that property was in the actual possession of a bankrupt at the time of the filing of the petition, and was by him surrendered with his other property to a receiver or custodian ad interim appointed by the court, places such property in custodia legis, and gives the court of bankruptcy jurisdiction to determine its ownership as between the trustee subsequently appointed and an adverse claimant; and such jurisdiction is not affected by the fact that the receiver, acting without authority, surrendered possession of the property to the claimant.

2. SAME—PROPERTY WRONGFULLY TAKEN FROM CUSTODY OF COURT.

One who has obtained possession of goods from a receiver appointed by a court of bankruptcy, who had no authority to surrender the same, by such intermeddling with property in the custody of the court submits himself to its jurisdiction for all purposes properly connected with proceedings to compel him to restore the property or its value, and where he has disposed of it, claiming to be the owner, the court may determine the question of ownership in the same proceeding as a matter affecting the propriety of entering a decree against him for its value.

3. SAME—ADVERSE CLAIMANT OF PROPERTY—BURDEN OF PROOF.

On the question whether a shipment of goods to an insolvent company a short time prior to its bankruptcy was pursuant to a sale, or whether the transaction was such that the shipper remained the owner, he has the burden of proof as against the trustee in bankruptcy, and his claim to ownership will not be sustained unless he fully and fairly discloses all the facts bearing on the nature of the transaction, and such facts show clearly that a sale was not intended at the time.

4. SAME—BAILORS AS ADVERSE CLAIMANTS.

Bailors permitting their goods, in the hands of an insolvent bailee becoming bankrupt, to pass into the custody of the receivers or trustees in bankruptcy, cannot occupy the attitude of adverse claimants in determining the jurisdiction of the court.

5. SAME—SALES—RETAINING TITLE—HOW DETERMINED.

The fact that a merchant ships goods to a customer, but consigned to himself, is not conclusive of a title reserved for future scrutiny of the

customer's financial condition, if there be other and equivocal facts tending to show an actual sale and a resort to this equivocal method for the purpose of denying a sale in case of bankruptcy. There must be good faith, and no sinister design, in the transaction.

In Bankruptcy. On exceptions to master's report.

Pierson & Pierson, for exceptions.
D. W. De Haven, opposed.

HAMMOND, J. This petition of the trustee against Hines for the recovery of about $500 worth of goods received by him from the referee in bankruptcy, acting as receiver or custodian of the property, has been twice on reference before the standing master, and is before the court again upon a second report sustaining the title of the trustee to the goods. Objection is taken again to the jurisdiction of the court, that question having been reserved from the beginning.

Both counsel seem under the misapprehension that it is necessary for the court to decide the question of adverse ownership as one involved in the question of jurisdiction. It is true, we are compelled to look at the facts found in the record relating to the ownership in order to determine whether or not Hines was, at the time of the filing of this petition, subject to the jurisdiction of this court, to entertain it against him; but certainly the jurisdiction of the court does not depend upon the fact of an adverse claim of ownership, and we may have the jurisdiction whether the goods belonged to him as an adverse claimant or not. The very question is whether or not we can entertain the jurisdiction to decide that controversy. The facts pertinent to the element of jurisdiction are that at the time of the bankruptcy the goods in controversy were in the actual manual possession of the bankrupt corporation and passed from it into the manual possession of the referee as custodian, upon the surrender of these and all the other goods to him. In my judgment, the simple fact of this possession by the referee in bankruptcy is conclusive in favor of our jurisdiction. By that possession the goods were in custodia legis—whether rightfully or wrongfully is another question. But that question may be rightfully decided by us. Whether it might also be rightfully decided by any other jurisdiction it is not necessary to determine. The bare possession by the court, through its officer, of the property, was sufficient to give us jurisdiction to determine to whom the goods properly belonged. The case belongs to the category of those controlled by the decision of the Supreme Court of the United States in the case of White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183, and not to that of those controlled by the decision of that court in Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175.

If it be a fact, upon the proof in this record, that the bankrupt held the goods as a bailee of the rightful owner, and yet, through some misapprehension, he surrendered them as his own to the bankruptcy receiver or trustee, or if he mixed them with his own goods and so surrendered them along with his goods, nevertheless, if the bankruptcy receiver or trustee deny title of the rightful owner and claim the property as that of the bankrupt, it is a controversy which this court has the plain jurisdiction to determine; and that jurisdiction cannot be defeated

by the delivery or surrender of the possession to the supposed rightful owner by the receiver or referee in bankruptcy, whatever may be said upon that point as to such a surrender by the trustee in bankruptcy after his appointment. The referee, as custodian or receiver, or a receiver ad interim, has no title to the goods, and no right or authority to determine any question of title or ownership, and no right to make any surrender of the goods to any claimant, so as to bind the trustee when he is subsequently appointed, or those who are interested in the estate. When the trustee is elected under the statute, he represents the title and ownership of the goods, for the benefit of the estate, and it is not impossible that if he should surrender them to a claimant, even under a misapprehension as to the ownership or validity of the claim, the latter would be such an adverse claimant as would bring the case within the jurisdiction of the case of Bardes v. Hawarden Bank, supra. But this cannot be the effect of a surrender by the referee holding goods under our rule constituting him the custodian until a trustee is appointed in cases of voluntary bankruptcy, nor by an ad interim receiver otherwise appointed until the trustee is elected. Therefore, when the defendant Hines represented to the referee as the temporary receiver that he was the owner of the goods, and persuaded him to accept his representations and deliver to him the two boxes of woolen stuffs as his own property, he did not thereby become an adverse claimant in such a sense as that he is entitled to rely upon the rule of Bardes v. Hawarden Bank, supra. On the contrary, he wrongfully took the goods from the possession of the court, whether he was the rightful owner or not, and he can be, by this court, compelled to restore that possession for the purposes of its jurisdiction; and the case stands as if the court had never been deprived of its jurisdiction, and Hines were himself the petitioner, asking to have the goods decreed to him upon the facts of this case. Bailees in possession of an insolvent's goods at the time of bankruptcy are not altogether favored claimants, and they must expect such embarrassment as a controversy arising with the trustee about the ownership of the property, and must be willing to submit that controversy to the bankruptcy court, if they permit their property to pass into its possession along with the bankrupt's own goods. Our bankruptcy statute is not so drastic as the English act, which passed the title to the trustee in bankruptcy of "all goods being, at the commencement of the bankruptcy, in the possession, order or disposition of the bankrupt in his trade or business, by the consent and permission of the true owner, under such circumstances that he is the reputed owner thereof." Property so situated passed to the trustee and creditors of the bankrupt upon the general ground of equity against one who allows a person to obtain the credit that belongs to reputed ownership acquired by consent of the true owner, so that, if one chooses to leave his property in the hands of an insolvent who becomes bankrupt, he cannot complain if those who give the bankrupt credit upon the possession of the property shall be held to have a better right to it than himself. Act of 1890, § 43; Williams' Bky. 175. This has long been a principle of English bankruptcy legislation. It has been mitigated somewhat by adjudications that discriminate in favor of the unfortunate true owner, under particular circumstances that show a better equity than the creditors may have under the general

rule. I call attention to this principle for the purpose of showing that, notwithstanding our bankruptcy act does not go so far as the English act, it does not lie in the mouth of a bailor whose goods are, by his consent, in the possession of an insolvent bailee who becomes bankrupt, to set up any objections to the jurisdiction of the court of bankruptcy to determine the ownership, if he permits the goods to pass into the possession of the officials, receivers, or trustees of the bankruptcy administration. He, probably, of all claimants, can least expect to have the advantage of being an "adverse claimant" in the sense of Bardes v. Hawarden Bank, supra. Certainly, if he reacquires possession by representations made to the receiver, who has no authority to deliver such possession nor to determine any question of title, he will not be allowed to take advantage of that recovered possession, although he may, in fact, be the rightful owner.

The case of In re Bender (D. C.) 106 Fed. 873, is very much in point in favor of the ruling we make here, though it presents the question in a somewhat different aspect. There the marshal seized the property in possession of the bankrupt under a writ issued by the bankruptcy court, upon the petition of creditors, after a voluntary adjudication. A claimant set up that the bankrupt was in possession only as his agent, and that the property really belonged to him, and he asked the court, upon a summary motion, to deliver the property to him, which the court refused upon the ground that it had no jurisdiction by a summary proceeding to settle the question of title; that, if the claimant choose to come in and submit to the jurisdiction of the bankruptcy court, it had jurisdiction to settle that title, but, if not, he could not be compelled to do so. It was not decided that the trustee could, by a petition against the rightful claimant, have invoked the jurisdiction of the bankruptcy court to settle the title, but the possession of the court was protected until the question of title was settled by a refusal to surrender it to the alleged rightful owner. If, however, that rightful owner had, by some arrangement with the receiver or the marshal, secured a surrender of the property to him, could there have been any doubt about the power of the court to compel him to replace it in the possession of the marshal? White v. Schloerb, supra. And that is, in legal effect, the purpose of this petition. With that jurisdiction goes, in my judgment, the power to determine the whole controversy.

One who meddles with the possession of the court by ousting it in any unauthorized way thereby necessarily submits himself to the jurisdiction of that court for all the purposes of making right that which has been done wrongfully by him. If he cannot restore in kind the very goods he has taken away, he must pay their value, and it would seem idle that a court of equity having jurisdiction for that purpose should find itself unable to determine the rightful ownership and settle the whole controversy. It is a familiar principle that courts of equity claim that right. It is true that in White v. Schloerb, supra, the bankruptcy court had not undertaken to determine the title to the property, but had specifically required the proceeds of sale to be kept separate and apart to abide the further order of the court; and the Supreme Court was careful not to go beyond the question certified to it, and reserved any opinion as to the right of the bankruptcy court

to settle the question of title, and only decided that it had the jurisdiction to compel a return of the property. In that case the goods had not been sold or disposed of by the wrongdoer, and his sale of them was restrained, and he was compelled to deliver them to the trustee, who sold the goods, and the court directed him to set apart the price until by proper proceeding all question of title was settled. Each case may depend upon its own circumstances, and since here the wrongdoer is not in a condition to restore the goods, and has appropriated them to his own use, restoration cannot be made without a decree against him for their value, and of course the court should not give a decree against him for their value if the goods belonged to him. There seems no reason for taking two judicial bites at this one cherry, and I feel quite sure that the case falls within the rule that an equity court having jurisdiction for the purpose indicated will complete the adjudication by finally determining it. 1 Fonbl. Eq. § 3; Story's Eq. Jur. 64 (k); 1 Pom. Eq. § 237; 1 Fost. Fed. Pr. 2; Id. 28, 234; Tayloe v. Merchants' Ins. Co., 9 How. 390, 405, 13 L. Ed. 187; Ober v. Gallagher, 93 U. S. 199, 206, 23 L. Ed. 829; Ward v. Todd, 103 U. S. 327, 26 L. Ed. 339; Sunflower Oil Co. v. Wilson, 142 U. S. 313, 324 (3), 12 Sup. Ct. 235, 35 L. Ed. 1025; Eames v. Home Ins. Co., 94 U. S. 621, 630, 24 L. Ed. 298.

An instructive case is that of The Eliza Lines, 114 Fed. 307, 315, 52 C. C. A. 195, where it is said that, the court having acquired jurisdiction of the subject-matter of the controversy, one who had intervened to interrupt the proceedings submitted himself to the jurisdiction of the court for all purposes, as well those which were incidental and auxiliary to the proceedings as the others, and it had a right to settle all the controversies and consequences which followed naturally and reasonably from their interruption of the prosecution of the voyage of the ships and their interruption in respect to the adjustment of the various rights in the vessel and her cargo. See, also, Centervill v. Fidelity Tr. Co., 118 Fed. 332, 337, 55 C. C. A. 348; Barrett v. Twin City Co. (C. C.) 118 Fed. 861, 865; Fidelity Tr. Co. v. Fowler Water Co. (C. C.) 113 Fed. 566, 571; Union Cent. Life Ins. Co. v. Phillips, 102 Fed. 19, 24, 41 C. C. A. 263; Old Colony Tr. Co. v. Dubuque Light Co. (C. C.) 89 Fed. 794, 810; Springfield Mill. Co. v. Barnard & Leas Co., 81 Fed. 261, 265, 26 C. C. A. 389; Ill. Cent. Tr. Co. v. Arkansas City, 76 Fed. 271, 288, 22 C. C. A. 171, 34 L. R. A. 518; Western Assur. Co. v. Ward, 75 Fed. 338, 341, 21 C. C. A. 378; Fitton v. Phœnix Ins. Co. (C. C.) 25 Fed. 880, 881; Berry v. Ginaca (C. C.) 5 Fed. 475, 481. The limitation upon this doctrine in its relation to the federal courts found in the case of Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867—a limitation as to which two of the judges dissented in that case even—has no application to a case like this. There the jurisdiction failed as to some of the parties because it was a case of which the federal court could not obtain jurisdiction at all. Here it is plain that the only obstacle to our jurisdiction, if any, is that contained in the special provisions of the bankruptcy statute. Even those limitations have been eliminated by the amendment to the bankruptcy statute, approved February 5, 1903 (chapter 487, §§ 8, 16, 32 Stat. 798, 800 [U. S. Comp. St. Supp. 1903, pp. 413,

417]) amending sections 23b, 67e, and 70e (Act July 1, 1898, c. 541, 30 Stat. 552, 564, 566 [U. S. Comp. St. 1901, pp. 3431, 3449, 3452]), so that now there will be no sort of doubt of our jurisdiction of this controversy, were it not for section 19 of the amended act (32 Stat. 801), which prohibits its application to cases then pending, this suit being brought before the amendment was passed. But the existence of the jurisdiction under the amended act shows conclusively that this case does not fall within the exception of Byers v. McAuley, supra, the subject-matter of which controversy, so far as it was rejected by the · Supreme Court, could not possibly come within the federal jurisdiction.

The case of Beach v. Macon Grocery Co., 116 Fed. 143, 53 C. C. A. 463, was one in which the receiver in an involuntary case of bankruptcy pending adjudication took control of property in the adverse possession of another, claiming it as her own, and sold it under the orders of the bankruptcy court. The Court of Appeals held that this part of the proceeding was wrongful, and the court was without jurisdiction, except to have enjoined the adverse claimant from making any disposition of the property until a trustee was appointed. It directed the money realized at the sale to be returned to her, to be held, however, in lieu of the property, without prejudice to the rights of the trustee to take such proceedings as would settle the ownership of the property. Evidently that was a case almost the converse of this.

In re Winship Co., 120 Fed. 93, 56 C. C. A. 45, was a somewhat peculiar controversy. Property went into the hands of the receiver, pending an adjudication upon an involuntary petition, being in the possession of the insolvent defendant at the time the receiver was appointed. Claimants who had leased the property to the bankrupt asked to have it returned under the terms of the lease. It was determined, upon the proof, that the transaction was really a sale and not a lease to the bankrupt, and thereupon the court ordered the receiver to settle, which was done, and the money paid into the registry of the court, but with a stipulation that the purchaser should return the property if the court should ultimately hold that it belonged to the alleged lessor. Before any final determination of this question the insolvent debtor made a composition with his creditors and paid the composition money into court, and creditors were paid according to its terms, leaving a balance, however, to represent the purchase money of the printing presses, the property in controversy. The Court of Appeals declined to decide some of the questions arising on this state of facts, and held that, the bankruptcy proceedings having been compromised, the property was to be returned to the alleged lessor by the purchaser, unless the lessor should choose to confirm the sale and take the money. The jurisdiction of the court to make this decree was put upon the distinct ground that property in custodia legis, whether the court be one of common law or equity or admiralty or bankruptcy, has the power to restore that possession to whomsoever it rightfully belongs. The receiver in the case was a mere caretaker, having no title, and was in no proper sense a trustee in bankruptcy with the powers conferred by the statute upon that fiduciary. The pertinency of the case is that it sustains in the most positive way the

jurisdiction of the bankruptcy court to deal with the right of property and settle it between the parties whenever it comes into the possession of the res itself, as it did in the case we have in hand.

The case of Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405 (same case, 105 Fed. 581, 44 C. C. A. 620, and Wayne Knitting Mills v. Nugent [D. C.] 104 Fed. 530), which so strongly reinforces the case of White v. Schloerb, supra, and makes the distinction between that case and Bardes v. Hawarden Bank, supra, which we are now making, supports our jurisdiction in this case. Among other things it was held in that case that an order to pay over the money was not an order for the payment of the debt, but an order for the surrender of the assets of the bankrupt which had been placed in custodia legis by the adjudication, just as in this case, although we may give a judgment against Hines for the amount and the value of the goods, we are, in effect, only compelling him to restore to the trustee in bankruptcy that which properly belonged to him, and which Hines had wrongfully taken from the custody of the receiver and the court. It is in no sense the adjudication summarily of the title as against one claiming adversely, but compelling one who has taken wrongful possession from the court to restore that possession, without respect to his title or his right; and, as an incident to that authority, we have full jurisdiction to determine the whole controversy, necessarily including the title or rightful ownership. The proposition is broadly laid down in Re Antigo Screen Door Co., 123 Fed. 249, 59 C. C. A. 248, that authority to determine the right to a fund in the possession of the court belongs exclusively to that court, and is incident to the jurisdiction of every court. But it must be kept in mind that this authority accompanies the property that is in custodia legis whenever it is, without consent of the court, taken into the possession of another. One holding such possession can take no advantage of it. The property is still, notwithstanding his interference and interposed possession, in contemplation of law in the possession of the court, which is the condition we find in this case.

In Re Kellogg, 121 Fed. 333, 57 C. C. A. 547, Id. (D. C.) 113 Fed. 120, jurisdiction is placed upon the safe ground that, if the trustee is in the actual possession of the property, the right of the court of bankruptcy, even before the amendment of 1903, to settle the question of title, is an incident to that possession; but if the adverse claimant is in possession, and the trustee must bring the suit, Bardes v. Hawarden, supra, applies, and without the consent of the adverse claimant the bankruptcy court cannot acquire jurisdiction. But here again I must call attention to the fact that this judgment proceeds upon the theory that although Hines got the actual possession by an arrangement which the receiver had no right to make, the technical legal possession remained with the court through its receiver, and passed to the trustee, whereby this case stands as if that technical legal possession had never been disturbed by Hines and his arrangement with the receiver. In re Gutman (D. C.) 114 Fed. 1009, is quite directly in point. The day after a receiver had been appointed, property at that time in the possession of the bankrupt was taken from him by a mortgagee, who claimed the right to possession under the terms of his mortgage. The court

held that this mortgagee did not obtain legal possession of the chattels by that act, but the right of possession passed to the trustee from the bankrupt, and was all the time constructively in the possession of the court when the mortgagee's wrongful possession was obtained. The mortgagee therefore had no right of action in the state court against the trustee, and such action was enjoined. In re Whitener, 105 Fed. 180, 44 C. C. A. 434, is another case quite nearly in point. There the bankrupt was in possession of a livery stable, consisting of the real estate and other property related thereto. He did not put this property in his schedules, to which his creditors objected, showing that it belonged to him, and he was directed to deliver it to the trustee, which ultimately he did, although he earnestly protested that the property did not belong to him, but to another whose agent he was. The claimant filed his petition in the bankruptcy court to have the property restored to him, which was refused, whereupon he applied to the state court for necessary process against the trustee under the theory of Bardes v. Hawarden Bank, that he was an adverse claimant as against the property in the possession of the trustee, and the state court directed the sheriff to put him in possession, which was done. Thereupon the bankruptcy court, upon the petition of the trustee, enjoined the proceedings in the state court, and compelled the redelivery of the property to the trustee, and the jurisdiction of the bankruptcy court to do this was approved in the opinion of the Court of Appeals, although the proceeding there seems to have been dismissed. In re Corbett (D. C.) 104 Fed. 872, is another case where the goods, having been removed by claimant after adjudication in bankruptcy and while they were in custodia legis, were restored to the trustee—ultimately, I take it, by a judgment for their value against the attorney who removed them for his fee, though that does not appear in the report. In re Gibbs (D. C.) 103 Fed. 782, is a case where it was held that the actual "occupation at the time of adjudication" gives the bankruptcy court jurisdiction to determine a controversy about the property.

I think it may be affirmed upon all the cases that the question of the jurisdiction of the bankruptcy court depends upon the possession of the bankrupt at the time of the filing of the petition. Whether he was the real or qualified owner, or held it in some other capacity, the bare possession by him gives the bankruptcy court jurisdiction, particularly if that possession passes into the hands of the official administrators of the bankruptcy court, such as receivers, either temporary or ad interim, or trustees.

Having thus determined that we have the jurisdiction which has been so strenuously denied by the learned counsel for the defendant Hines from the very inception of this controversy, it only remains to determine to whom the property really belonged—whether to him or to the bankrupt corporation. That is purely a question of fact, and the court is entirely satisfied with the determination of it by the standing master in chancery, who reports that the property belonged to the bankrupt corporation, and not to Hines. All exceptions to his report are overruled. There is little difficulty in understanding the law of sales applicable to the facts of this case as reported by the master, or

as shown by the evidence sent up by him with his report, upon which his findings are based; but it has required a nice discrimination as to the application of the law of sales to the particular facts of this transaction, and the court is well satisfied with the treatment of the testimony by the master in working out his conclusions that there was a sale to the bankrupt corporation, and that the goods belonged to it. It is not necessary to repeat here the findings of the master in respect of this, but only to say that he bases his conclusion against the significance of the almost sole fact in favor of Hines, namely, that he shipped the goods consigned to himself in the care of the bankrupt corporation, and that the packages were so delivered, upon other facts appearing in the case which show either that this was a device by Hines to protect himself against what he intended to be a real sale, or that it was subsequently converted into an actual sale by the occurrences in the transaction. Hines does not present, in his testimony, that frankness of disclosure and full information which would strengthen his credibility, and there is some appearance of disingenuousness all through it. For one thing, he does not produce, nor satisfactorily account for the absence of, the letters which accompanied the invoices sent to the consignee. I think it may be agreed that the counsel for the trustee did not press him for information as to the contents of those letters in such a way as ought to have been done; still he was called upon to produce all his papers, and these he did not produce, and gave no reason for it. The failure of the bankruptcy trustee to produce them, or of the bankrupt to produce them, is accounted for by the fact that they were loosely thrown away or mislaid in the confusion attending the bankruptcy and transfer of possession. Those letters undoubtedly would show precisely what was in Hines' mind when he sent the two boxes of woolen stuffs in his own name to himself as the consignee, but in the care of the bankrupt concern. That which the management did upon the receipt of the goods shows that they understood it to be a sale, and indicates that they received that impression from the accompanying letters, or from them and the circumstances of their dealing with Hines. It must be conceded that their impression of the transaction, and even their conduct in relation to it, cannot, of itself, bind Hines as to his intention in sending the goods; but if he fails to produce the letters sent at the time, and subsequently asserts that his intention was not to make a sale, but to place the goods in the care of the company until he could afterwards deal with them, the assertion is not so strong as if he should produce the letters in confirmation of it. In the ordinary course of business the letters ought to show precisely how the fact was, and the want of them will be taken most strongly against Hines. Again, the fact that the manager of the business of the corporation, after the receipt of the goods and after dealing with them as if they had been sold to the concern, changed his mind, and, on the advice of a lawyer, concluded that the fact that they had been sent consigned to Hines himself was conclusive against the company's right to them, is not binding on the trustee in bankruptcy. This testimony of the manager is subject to some scrutiny, if not suspicion, when we consider the fact that immediately after the bankruptcy, and upon his statement, the goods were surrendered by the referee as receiver to Hines, and this same manager immediately

went into possession of the goods as a partner of Hines in a new firm doing the same business after the bankruptcy.

Another circumstance upon which the master somewhat confidently relies, and the court thinks fairly and justly, is the fact that, according to the custom of the trade in such goods, four yards of each bolt of woolens for tailoring purposes is cut off and sent outside of the packages containing the goods themselves to the purchaser, for the purpose of display and as a sample, for use in selling to customers. In this transaction this custom was followed, and the four-yard samples were sent to the consignee without any restrictions or instructions as to their use, and were immediately displayed and used as samples of goods belonging to the stock of the company; while, if the transaction had been such as Hines now contends it was, naturally and in the ordinary course of business he would not have cut off such samples, but would have packed all the bolts of cloth uncut. in the shipping packages. There could have been no purpose in sending samples if there was no sale, but only a contemplation of a sale at some future time. It is on such circumstances as these that the master finds the fact against Hines, and I think correctly. There are many other circumstances in the proof that point in this direction, but it is hardly necessary to call attention to them here. It may be said in favor of Hines that he undoubtedly had suspicion of the ability of the company to pay for these goods, and it certainly would have been within his right to hold the title by consigning them to himself and awaiting developments; but even in that view it would have been more prudent and according to ordinary dealings to have consigned them in the care of someone else than the proposed purchasers, though there is no difficulty in consigning them to such proposed purchaser if it be done for the purpose of retaining the title and ownership until a future time, and it might be convenient to adopt that course. Hines testified that he did it for this convenience, and, because of his suspicion that they would not be able to pay for the goods, he desired to retain control of them until he could come to Memphis to see if it was safe to sell them to these parties. But, after all, he left his goods unreasonably in their hands, under circumstances leading them to believe that there had been a sale to them, and which were equivocal in their indications, notwithstanding the main fact that he did consign the goods to himself in their care. He had had previous dealings with them for the sale of goods, and they owed him a considerable sum when the bankruptcy occurred; but, at last, his claim of title depends almost entirely upon his assertion of an intention not to sell on this occasion, and the one fact that he did consign them in the unusual manner already stated. The master found that this fact and his testimony as to his intention were overborne by the accompanying circumstances that militate against him, and the court is not disposed to disturb that finding.

There is another controlling consideration in reaching this judgment. We know from judicial experience in the administration of the bankruptcy statute, and from the numerous cases arising in the bankruptcy courts everywhere, that there is a tendency on the part of sellers of merchandise to protect themselves against the possible bankruptcy of their customers by equivocal devices which will enable them to claim

a sale if the customer goes through the pending difficulties safely, but to claim ownership if he fails and becomes bankrupt. Resort is had oftentimes to undeniable and effective conditional sales and retention of the title, with similar methods of dealing to that we have here and with reservations appropriate to that kind of security, but sometimes it is not convenient or desirable to take the effective way of retaining title or making conditional sales, and yet the desire is to give to the transaction that false appearance, so as to meet possible emergencies. Therefore, in my judgment it is the duty of the bankruptcy courts to scrutinize such transactions with the utmost care, and protect the assets of bankrupts against invasions that may come by dubious dealings in business; and I think the rule of law is established that the seller must show the utmost good faith in the transaction, and the burden is upon him to establish the fact by a preponderance of the testimony that he remains an owner, and did not become a seller and creditor. The courts cannot allow him to shift his position from creditor to owner upon any except the clearest proof of such self-protection, made in good faith at the inception of the dealing, and not conceived afterwards for the purpose of escaping the results of a bad bargain.

Exceptions overruled.