### In re NUGENT.

#### MUELLER v. NUGENT.

(Circuit Court of Appeals, Sixth Circuit. January 8, 1901.)

#### No. 920.

1. BANKRUPTCY—SURRENDER OF ASSETS—CONTEMPT PROCEEDINGS.

Bankr. Act 1898 (30 Stat. 544) does not authorize the trustee to compel, by process for contempt, the surrender to the trustee of assets properly belonging to the estate, by one who obtained possession of them before the filing of the petition; such property being only obtainable by ordinary legal remedies applicable between any two claimants of property.

2. SAME—UNITED STATES DISTRICT COURT—JURISDICTION.

Bankr. Act 1898 (30 Stat. 552) § 23b, provides that suits by the trustee shall only be brought in those courts in which the bankrupt might have brought them but for the bankruptcy proceedings, except by consent of the defendant. Held, that one who obtained property as agent of a bankrupt before the filing of a petition against him, the trustee, the bankrupt, and the agent all being residents of the same state, was not subject, without his consent, to process from the United States district court to compel the surrender of the property to the trustee, since the bankrupt could not have sued in that court to recover the property if the bankruptcy proceedings had not been instituted.

On Petition for Review from the District Court of the United States for the District of Kentucky.

W. W. Smith, for petitioner.

W. W. Watts, for trustee.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge. On the 23d day of March, 1900, E. B. Nugent was adjudicated a bankrupt upon the petition of the Wayne Knitting Mills and others, his creditors, filed February 19, 1900, and the matter was referred to a referee. Shortly thereafter Arthur E. Mueller was appointed trustee of the bankrupt's estate. On the 7th of April following, the trustee obtained an order upon the bankrupt from the referee requiring him to show cause why he should not be required to pay over to the trustee two sums,—one of $4,133.45, which it was alleged the bankrupt had received upon a mortgage of his house and lot in Louisville, and another of $10,100, alleged to have been received by him upon the sale of a stock of goods with which he had been doing business in that city. In the bankrupt's response he stated that the moneys were in the hands of his son, W. T. Nugent, and that it was impossible for him (the bankrupt) to pay the money to the trustee. Upon the hearing this response was held by the referee to be insufficient, and the bankrupt was ordered to pay the funds mentioned into the hands of the trustee. Upon the bankrupt's failure to do this, he was adjudged guilty of contempt by the referee, and the matter was reported to the court, with a recommendation that the bankrupt be committed for his contempt. Upon a suggestion that the bankrupt was of unsound mind and approaching senile imbecility, the court declined to make the order and discharged him. On the 13th day of April, 1900, the trustee presented to the referee a petition for an order to show cause against William T. Nugent, the present petitioner for review. In that petition the trustee alleged that the bankrupt pretended that the proceeds of the mortgage and stock of goods were in the possession of William T. Nugent, who had been ordered to appear and testify; that the latter concealed himself, and could not be found by the marshal. It was further stated that it was "shown by the evidence herein" that the said William T. Nugent was authorized by the bankrupt to receive the said moneys, and that the bankrupt pretended that the money was intended to be used in the payment of creditors and starting another business elsewhere. The trustee further stated in his said petition that he did not know whether the money was in the hands or under the control of E. B. Nugent or William T. Nugent, but he was fearful it would be dissipated unless an injunction should be issued against William T. Nugent, restraining him from disposing of any part thereof, and an order made that he pay the said moneys into the hands of the trustee; that, as the trustee believed, the said moneys were part of the estate of the bankrupt, and that, if they came into the hands of said William T. Nugent at all, they did not come to him "as a common or simple debtor," "but that said sum is a fund belonging to this estate, and should be in the hands" of the trustee. Whereupon the trustee prayed that an order for an injunction, restraining William T. Nugent "from disposing of

said moneys, may be made, and further ordering him to pay all thereof, or such as he may have in his hands, to the trustee." Thereupon, without notice to the respondent, the referee forthwith made an order for the injunction as prayed, and further commanding him within five days after service of the order to show cause why he should not be required to pay said sum of money to the trustee. Neither the petition nor the order stated when the moneys came to the hands of the respondent, or under what circumstances. A copy of the order was served upon the respondent on October 8th, and on the 13th a hearing was had thereon before the referee. Shortly before that date an indictment had been found by the grand jury in the United States district court for the district of Kentucky against William T. Nugent, charging him with having unlawfully and fraudulently received $10,000 and other moneys of the bankrupt with the intent to defeat the provisions of the bankrupt act. On the above-mentioned hearing before the referee on October 13th the said William T. Nugent filed a response, in which he alleged that he had at no time since the filing of the petition in bankruptcy received the moneys with which he was charged, or any part thereof, and excused himself from further answering by reason of the above-mentioned pending indictment, and the tendency of his answer to criminate himself. He further, in his said response, denied the jurisdiction of the referee to make the order on which the referee was proceeding. The referee proceeded to take testimony upon the matter of the order, and, on a subsequent day to which the proceedings were adjourned, adjudged that the response to the order was insufficient, and that the said moneys were the proceeds of the mortgage of the house and lot, and of the sale of the stock of merchandise, the property of the bankrupt, and were received by the said William T. Nugent, as the agent of the bankrupt, on February 19th, before the hour of 2 o'clock p. m.; that the petition in bankruptcy was filed at 5 o'clock p. m. of the same day; and that, as it further appeared that he had not paid over said moneys to the trustee, the order should be made absolute. It was thereupon further ordered that the respondent pay the moneys to the trustee before 9:30 o'clock a. m. of the next day. The respondent having failed to comply with this order, the referee adjudged him in contempt, and reported the matter to the court, with a recommendation that he be committed to prison until he should pay the moneys to the trustee. The respondent prayed for a review by the district judge of the order requiring him to pay the moneys to the trustee, and the referee certified the proceedings to the district judge. The matter came on for hearing before the judge upon the report and certificate of the referee, and on November 1, 1900, the judge announced an opinion that the proceedings of the referee should be sustained, and his recommendation of imprisonment approved. The matter was postponed until the 3d of November, when counsel for the respondent tendered an amended response which was verified by the respondent, in which he stated, in substance, that he had failed to make response before the referee respecting moneys received by him before the petition in bankruptcy was filed, because, as he was advised, his answer would tend to incriminate him of the

charge contained in the above-mentioned indictment, but that he now asked to amend his response; and, in addition to what he averred in his former response, he said "that whatever moneys came to his hands on February 19, 1900, belonging to said E. B. Nugent, or any such money at any subsequent date thereto, was not received or held by this respondent as agent or bailee, or in any trust capacity whatever, but was held adversely to said E. B. Nugent." The judge declined to permit this amended response to be filed, being of opinion that it was too late. The following order was then entered:

"And, thereupon, pursuant to the opinion of the court filed herein on the 1st instant, it is the judgment of the court that William T. Nugent, for his contempt aforesaid, be imprisoned and confined in the county jail of Jefferson county, Kentucky, until he shall deliver or pay to Arthur E. Mueller, the trustee herein, said sum of $14,233.45, or otherwise satisfy the said trustee with respect thereto; and the court reserves the right and power to suspend or set aside the judgment and sentence upon the delivery, payment, or satisfaction aforesaid. To all of which the respondent, William T. Nugent, excepts."

In pursuance of this order the respondent was committed to the county jail. Upon his petition the proceedings were certified to this court for review. The petition for review by the district judge prayed only for the review of the order of the referee ordering the respondent to pay the sums of money mentioned to the trustee, and it is the action of the district judge upon that petition which is the subject of our review; but as the validity of the referee's order requiring the payment of the money, and the order finding the respondent guilty of contempt, and the authority of the judge to order the imprisonment, depend upon the previous proceedings, the whole of the proceedings must necessarily be considered.

It must be admitted that the circumstances shown by the record would, unexplained, tend strongly to indicate that the petitioner was a party, and perhaps the principal party, to a fraud upon the creditors of the bankrupt. But if he was under no valid requirement to make defense, and show such explanatory facts, if they exist, as would relieve the present appearances, and he has failed to do so in consequence of his reliance upon his objection that the proceedings were without lawful authority, it would be premature to pass judgment on the merits of the case.

The question of the legality of the proceedings is twofold: First, whether it is competent for the court in bankruptcy to adopt this summary method of getting the assets of the bankrupt in, under circumstances such as these; and, second, if such authority existed, whether it was duly exercised in the present case. It is needless to say that if the facts are as found by the referee the fund in question was of the assets of the bankrupt, and that upon his qualification the trustee became vested with the title thereto as of the date of the adjudication of bankruptcy, and the right to its possession. But the question is, how may he recover such possession? If the circumstances are such that the bankrupt himself, but for his bankruptcy, could not recover the fund by a summary proceeding against one who withholds it from him, is there any provision in the bankrupt act which entitles the trustee to resort to it? The person in pos-

session of the fund before the petition in bankruptcy was filed could not be dispossessed by violence, or otherwise than by a plenary suit, where his right to retain it could be tried and determined. Is his privilege taken away by the succession of the trustee to the bankrupt's right? It seems to be settled that the trustee stands in the place of the bankrupt for all purposes except that of asserting certain rights of creditors, in respect of which the bankrupt's hands, are tied for their protection. But that exception has reference to rights of property, and not to the remedies for their enforcement. We are not referred to any provision in the bankrupt act which accords the right to the trustee to resort to a summary proceeding against one who is not a party to the proceedings for the recovery of assets withheld from him by such other party, who has the possession of them. In Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, the supreme court indicated its opinion to be that congress intended "that the ascertainment, as between the trustee in bankruptcy and a stranger to the bankruptcy proceedings, of the question whether certain property claimed by the trustee does or does not form part of the estate to be administered in bankruptcy shall not be brought within the jurisdiction of the national courts solely because the rights of the bankrupt and of his creditors have been transferred to the trustee in bankruptcy." The district judge and the referee seem to have thought that if, in the judgment of the court, the possession was not adverse to the bankrupt, such proceedings might be adopted to dispossess the holder. But it is the exercise of jurisdiction to determine whether the circumstances are such that the possession is really in right of the bankrupt or adverse to him or to the trustee. It would be the pith of a controversy in a suit at law or in equity brought to enforce the rights of the trustee. The view which was entertained in the district court seems to have been taken from the language of decisions which have denied the right of the bankruptcy court to take jurisdiction of causes between the trustee and outside parties claiming adversely to him when there was no jurisdiction independently of the bankrupt act, referring particularly to the recent case of Bardes v. Hawarden Bank, above cited. But such language was meant, as we understand from its context, to include all holdings as adverse when the circumstances are such that the property cannot be recovered without resort to legal remedies; for the reasons given for the decision would apparently include all such cases. In the case of a general assignment for the benefit of creditors, the assignment being void, the assignee's possession is without right, and the title as well as the right to possession is in the assignor. But, if the latter cannot recover the property otherwise than by legal proceedings, he must resort to the ordinary legal remedies. We perceive no valid distinction between such a case and any other where there is an adverse holding in fact by one not a party to the proceedings, no matter what the character of such possession may be in point of law. Neither was the respondent subject to process from that court. The respondent, the bankrupt, and the trustee were all citizens of Kentucky. If the bankrupt could not have instituted legal proceedings in the district

court for the recovery of the money, it seems clear that the trustee could not. The jurisdiction is not changed by the transfer of the title from the bankrupt to the assignee. And it was declared in the Hawarden Bank Case, above referred to, that, under the second clause of section 23 of the bankrupt act, controversies not strictly or properly part of the proceedings in bankruptcy, but independent suits brought by the trustee in bankruptcy to assert a title to money or property, as assets of the bankrupt, against strangers to those proceedings, do not come within the jurisdiction of the district courts of the United States, unless by consent of the proposed defendant.

But it is urged that the respondent was the agent of the bankrupt, and that his possession was that of the bankrupt, and that, as the bankrupt could be compelled to turn over the fund, so might his agent. This argument again confounds the actual with the theoretical conditions, and it is with the former that we are necessarily concerned. Let it be conceded that in the eye of the law the possession of the agent is that of the principal; yet if, as matter of fact, the agent withholds the property of his principal, the latter must have recourse to the ordinary legal remedies, and in a proper court. The fiduciary relation between them gives the principal no extraordinary remedy to compel the agent to deliver the property which he holds to his master. That relation may affect the determination of the court when its jurisdiction has been properly invoked, but that is another matter. The case with which we have to deal is one where the bankrupt transferred the assets before the petition in bankruptcy was filed, and the trustee has never had possession, and where his right is given by the retroactive operation of the law resulting from the adjudication in bankruptcy. How the matter would stand where the assignee has obtained possession of the assets, and a third person dispossesses him or otherwise meddles with the assets, is a different question, and is subject to different considerations, into which we have here no necessity to go.

Our conclusion that these proceedings are invalid for lack of sufficient authority from the law also makes it unnecessary to consider whether, if such authority existed, the petition to the referee for the order to show cause was sufficient to found the proceedings against the respondent, and whether the proceedings taken thereon were regular or otherwise. It results that the order of the district court for the commitment of the respondent should be reversed, and the order to show cause made by the referee, together with his order requiring the respondent to pay the trustee the money under his control, as well as the order adjudging the respondent to be in contempt, should be vacated and set aside.