### In re ROGERS & STEFANI.

(District Court, W. D. Arkansas, Ft. Smith Division. October 10, 1907.)

1. BANKRUPTCY—COMPENSATION OF STATE RECEIVER—JURISDICTION OF STATE COURT TO ALLOW.

A state court took possession of the property of a partnership through its receiver in a suit between the partners for a dissolution, and subsequently, in accordance with a stipulation between the parties, it ordered the receiver to return the property which he did. Some time later, and more than four months after the commencement of the partnership suit, bankruptcy proceedings were instituted against the partnership, in which an adjudication was made and a trustee appointed, who took possession of the property from the bankrupts. Afterwards the receiver made his report to the state court, which approved the same and discharged the receiver, at the same time making him an allowance for his services, which it directed to be certified to the bankruptcy court for payment. *Held* that, on the return of the property to the partners, such court lost jurisdiction over the same, or to make any order with respect thereto, and its order was not binding on the bankruptcy court, which had previously succeeded to the possession of the property and full jurisdiction to administer the same.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 321–323.]

2. SAME—RIGHT OF RECEIVER TO COMPENSATION.

A court of bankruptcy will not allow compensation to a receiver of a state court, who previous to the bankruptcy had possession of the bankrupt's estate, for time during which no service was rendered, nor for services which were of no benefit to the estate.

**3. SAME.**

A receiver of a state court, who, on turning over the property to the parties pursuant to an order of the court, with their consent withheld certain accounts for collection, the proceeds to be applied on his compensation, but who made no effort to collect the same, is not entitled to return them to a trustee in bankruptcy, subsequently appointed for the owners of the property, after they have become worthless, and to be allowed their amount from the estate.

In Bankruptcy. On review of referee's decision in re claim of E. G. Connolly.

Youmans & Youmans, for petitioner.
A. A. McDonald, for trustee.

ROGERS, District Judge. This claim of E. G. Connolly is before this court for review of an order of Hon. L. H. Southmayd, one of the referees in bankruptcy of this court, who disallowed the whole claim as without merit, except as to the item of $26.25 thereof, which he allowed as a preferred claim. The facts are these: On the 17th of March, 1905, A. L. Rogers filed a complaint in equity in the chancery court for the Greenwood district of Sebastian county, Ark., against his partner in the saloon business, Charles Stefani, praying for judgment dissolving the copartnership, the sale of the property through a receiver to be appointed, the payment of the firm debts, and the distribution of the net proceeds between the partners; and on the same day the chancellor appointed the present claimant, E. G. Connolly, receiver, with full powers. Presumably the case took the usual course for like cases, until the 10th of August, 1905, when at the instance of the parties to the suit, and with the consent of the principal creditors, the chancellor, at chambers, made an order directing the receiver, on certain conditions specified in the order, to turn all the property in his hands back to the parties in the suit, and to file, on or before August 21, 1905, a complete report and account of his receivership. The order also provided that the receiver should not be discharged until said account (which should remain open for inspection until the third day of the October term of court) should be approved. On August 18th this order was temporarily suspended until August 21, 1905, at the instance of a creditor who was not represented when it was made. On the 29th of August, 1905, acting under the order of August 10, 1905, the receiver delivered to the owners, Rogers & Stefani, all the assets in his hands belonging to them except some books of account, and some accounts aggregating $139.60, the latter of which he kept, intending to collect the same and pay himself certain allowances made him in the order of August 10, 1905. These accounts he did not collect, or make any effort to collect, and took no further steps in the receivership until October 25, 1905, when he filed his report and account as receiver under the order of August 10, 1905. In that report he charges himself with the $139.60 in accounts which he had withheld to collect and pay himself with. His account showed that they were taken for collection. But he did not collect them, or make any effort to do so, until December 2, 1905, when he filed an amendment to his October 25th account and credited himself with the same amount,

$139.60, and also set up claim for three months' services, from September 1st to December 1st, at $150 per month, and $30 for personal expenses in attending upon the chancery court.

There is some confusion in the evidence as to what became of the $139.60 in accounts, but not a dollar was ever realized upon them by the estate of Rogers & Stefani, and no effort was made by Connolly to do so at any time from August 10th to December 2d, and the proof affirmatively shows that during that period he performed no services of any character of any value to the estate of Rogers & Stefani. Meantime, on the 11th of September, 1905, 13 days after he had, under the order of August 10, 1905, delivered to Rogers & Stefani all their assets then in his hands, a petition in bankruptcy was filed against Rogers & Stefani, and on the 31st of October, 1905, they were adjudicated bankrupts, and in due course of procedure a trustee was appointed, who took into his custody the estate of Rogers & Stefani, and the same was in his hands as such trustee and in due course of administration on December 2, 1905, when the final report and amendment thereto of claimant as receiver came on to be heard for approval by the chancery court for the Greenwood district of Sebastian county, Ark. On the hearing of this report the following order was made:

"Now on this day the parties appear, and Ed Connolly files supplemental report, in which he asks credit for $139. the same being for claims which he charged himself, which are uncollectible, and also for his salary for three months from the 1st day of September to December 1, 1905, $450, and also his necessary expenses for attending court at Greenwood for two terms, $30; also a fee of $54 paid to his attorney, J. M. Spradling. Upon consideration whereof, the said claim for uncollectible bills is allowed, $139; expenses attending court, two terms, $26.25; and, it appearing that the said receiver has not been discharged in this action and has been at all times subject to the orders of this court in the discharge of his duties, is allowed the said sum of $450 for his said services from September 1 to December 1, 1905, making in all $615.25, and the said attorney's fee of $54 is also allowed, which is ordered taxed as costs in this action. Also comes the clerk of this court, who was appointed master, and who has heretofore filed his report, which was approved, including a fee of $50 allowed him and taxed as costs, and further shows that his costs as clerk not heretofore paid is the sum of $3.60. And also comes the sheriff and shows to the court that his costs not heretofore paid is $3.05, which respective sums are allowed and ordered paid. And it appearing to the court that this is an action between partners to dissolve and settle the partnership existing between them, and that during the pendency in this court the creditors of said partnership proceeded in the District Court of the United States for the Western District of Arkansas, at Ft. Smith, Ark., against said partners, under the bankruptcy law of the United States, and in such proceedings of said court adjudged said partners to be bankrupts. Now, therefore, the clerk of this court is ordered to certify all the aforesaid costs to the said United States court, and the referee thereof, to the end that the same may be preferred and paid according to law. And it is further ordered herein that the said receiver, Ed Connolly, having fully reported, is finally discharged."

It is upon this order of the chancery court that the claim of the petitioner is based.

The question raised is whether this court is bound by that order, or whether it will pass upon this account upon its merits. In this case the said chancery court acquired jurisdiction of the persons and property of Rogers & Stefani, the bankrupts, more than four months before the proceedings in bankruptcy were begun, and if it had retained posses-

sion of the property until the order in controversy was made it would not have lost control of the property by the adjudication in bankruptcy. If the trustee in bankruptcy in a case of that kind had any rights in the property in the custody of the state court through its receiver, the law and the procedure in such case is well established. In re Knight (D. C.) 11 Am. Bankr. Rep. 1, 125 Fed. 35; Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47.L. Ed. 122; Pickens v. Roy, 187 U. S. 177, 23 Sup. Ct. 78, 47 L. Ed. 128; Jaquith v. Rowley, 188 U. S. 620, 23 Sup. Ct. 369, 47 L. Ed. 620. But there is no pretense that the trustee acquired possession of the estate of the bankrupt by taking it from the receiver of the state court, either with or without his consent; on the contrary, it is undisputed that he took it from the bankrupts themselves, to whom the receiver had delivered it under an order of said chancery court entered more than 60 days before the trustee was appointed. True, the receiver had not been discharged, nor had his account been approved, by the said chancery court; but manifestly the said chancery court did not regard the property as being in the hands of its receiver, for in that event, presumably, it would have held onto the property, and by appropriate orders compelled the payment of the costs of its officers and all legitimate expenses incurred, as it had the undoubted right to do, and would not have certified its order making allowances to its officers to the bankrupt court for payment. This last statement is limited to cases in which the state court had acquired jurisdiction more than four months before the proceedings in bankruptcy were begun. The question is not before the court in this case as to what the law is with reference to cases in which the state court has acquired jurisdiction within the four-months period.

This case, therefore, stands in this attitude: The state court by its own orders caused its receiver to surrender the bankrupts' estate to the bankrupts, in whose possession it was subsequently seized by the trustee in bankruptcy. Afterwards that court made an order fixing the allowance of its receiver, his attorney, and its clerk, and made such allowance a preferred claim upon the assets of the bankrupt in the hands of the trustee, and caused the same to be certified to the bankrupt court accordingly. In effect the making of this order was tantamount to an effort on the part of the state court to administer, as far as this order went, the estate of the bankrupt, rightfully and previously in the possession of the bankrupt court. This was attempted in the case of In re Reynolds (D. C.) 11 Am. Bankr. Rep. 758, 127 Fed. 760, in which case, five days after the adjudication in bankruptcy, a mortgagee of a part of the bankrupt's property took possession of it under the terms of his mortgage, which was executed and duly recorded more than four months before the bankruptcy proceedings were begun, which property, at the time he took possession, had not been actually seized by the trustee in bankruptcy. The mortgagee then filed suit in the state court to foreclose the mortgage, and prosecuted it to judgment. The trustee by appropriate proceedings brought the matter to the attention of the bankrupt court. . The court said:

"The only question here presented is as to the effect of the adjudication of bankruptcy in the premises. An adjudication in bankruptcy operates in rem, and from the moment of the adjudication the bankrupt's estate is under the

jurisdiction of the bankruptcy court, which will not permit any interference with its possession, even though it be by an officer of a state court acting under its process. Being a proceeding in rem. all parties interested in the res are regarded as parties thereto, including the bankrupt and trustee, as well as the creditors, secured and unsecured. The adjudication vests in the trustee or temporary receiver the title of the bankrupt's property, and stays all seizures made within four months. An adjudication of bankruptcy has the force and effect of an attachment and an injunction. It is a caveat to all the world. Bank v. Sherman, 101 U. S. 403, 25 L. Ed. 866; Conner v. Long. 104 U. S. 228, 26 L. Ed. 723; Mueller v. Nugent, 184 U. S. 14, 22 Sup. Ct. 269, 46 L. Ed. 405; Id., 7 Am. Bankr. Rep. 224, 105 Fed. 581, 44 C. C. A. 620; In re Pekin Plow Co., 7 Am. Bankr. Rep. 369, 112 Fed. 308, 50 C. C. A. 257; In re Fraizer (D. C.) 9 Am. Bankr. Rep. 21, 117 Fed. 746; In re Brooks (D. C.) 1 Am. Bankr. Rep. 531, 91 Fed. 508; In re Huddleston, 1 Am. Bankr. Rep. 572; In re Smith & Dodson (D. C.) 2 Am. Bankr. Rep. 9, 92 Fed. 135; Chesapeake Shoe Company v. Seldner. 10 Am. Bankr. Rep. 470, 122 Fed. 593. 58 C. C. A. 261; Brandenburg's Bankruptcy, §§ 250, 494, 495. * * * The question as to the bar of the judgment pleaded, and the estoppel claimed to have been presented thereby, is without merit. In virtue of the adjudication in bankruptcy, this court acquired jurisdiction over the res. The jurisdiction thus acquired was both complete and exclusive. Being prior to that of the state court, it was permanent. The state court was without jurisdiction in the premises, and any judgment it may have rendered as the result of the litigation between Strain and said trustee it was and is powerless to enforce, and is not binding on this court; and such judgment cannot affect the right and power of this court to assert its jurisdiction over the property in question, and proceed to a determination of the right to its possession. Collier on Bankruptcy (4th Ed.) 222; In re Chambers et al. (D. C.) 3 Am. Bankr. Rep. 537, 98 Fed. 865; In re Russell, 3 Am. Bankr. Rep. 658, 101 Fed. 248, 41 C. C. A. 323; In re Baird (D. C.) 8 Am. Bankr. Rep. 649, 116 Fed. 765."

In Hanson v. Stephens, 11 Am. Bankr. Rep. 172, 116 Ga. 722, 42 S. E. 1028, the Supreme Court of Georgia went as far, perhaps, as any court has gone in a case of this kind. In that case a bill in equity was filed on the 27th of November, 1901, and, after making certain allegations, prayed for equitable relief and for an injunction and a receiver, and on the 5th of March following a receiver was appointed and an injunction granted. Pending that condition a petition in involuntary bankruptcy was filed against the defendant, and on April 5th following an adjudication was had, and during the same month a trustee appointed. On May 19th, following the established practice, the bankrupt court authorized the trustee to appear in the state court and apply for an order requiring and directing the receiver to surrender to him the property in controversy. That was done, and no one resisted the application of the trustee to regain possession of the property; but the attorneys representing the receiver applied to the state court for an order allowing their fees and expenses out of the assets of the bankrupt. The state court made an order directing its receiver to surrender the property to the trustee in bankruptcy upon payment of the expenses of the receiver, amounting to $32.60, and payment of $500 to the receiver and $500 to the attorneys, which the court adjudged to be due them. The trustee excepted to this order of the state court, and an appeal was had to the Supreme Court of Georgia. That court held that the action of the lower court was error. It recognized the right of the state court to appropriate any cash its receiver might have on hand to the payment of the expenses incurred in the state court, but denied the power in the state court to cause property in the hands

of its receiver to be sold to pay such expenses, or to pass any order that would be binding on the 'bankrupt court. It said:

"It was admitted that the only fund in the hands of the receiver was $43.39, and the only way in which the additional sum ordered to be paid could be raised was by the sale of sufficient assets in the hands of the temporary receiver. But, at the time the order was passed, title to these assets had vested in the trustee in bankruptcy. By section 70a of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]) it is declared that the trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he should have one or more, upon their appointment and qualification, shall, in turn, be vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, except in so far as it is to the property exempt. * * * At the very date of the passage of the order in this case, by operation of the bankrupt law the title to the property had been taken out of the bankrupt and put in the trustee for the benefit of the bankrupt's creditors. The bankruptcy court had assumed full jurisdiction, and the trustee was entitled to have the estate of the bankrupt, wherever that might be found. There is a marked difference in charging a fund already raised by a sale of the property of a debtor with the expenses of its conversion into cash, and subjecting the property to sale for the purpose of raising funds for the purpose of paying costs and expenses after he has been adjudged a bankrupt. It is our opinion that the judge erred in passing the order to which exception has been taken; and, while he could very properly have devoted to legitimate expenses and costs the cash in the hands of the temporary receiver, he had no power or authority to make the order for the delivery of the assets contingent upon the payment of the fees of the receiver and attorneys, or cause the property of the bankrupt in the hands of the temporary receiver to be sold for the purpose of raising such funds. Any person, under such circumstances, urging a claim to be paid from the bankrupt's estate, whether he is a creditor of the bankrupt, or because he has rendered services in caring for the estate or preserving the property for the benefit of creditors, should be referred to the proper court of bankruptcy, where the merits of such claims and their priorities can be passed on and established. It was, in our opinion, immaterial that the judge refused to pass on the question of dissolving the temporary injunction and receivership. The effect of adjudicating the debtor to be a bankrupt transferred the control and management of his estate to the bankrupt court, and placed the right of adjudicating the claims of creditors in another forum. But he erred in granting an order making the transfer of the property of the bankrupt to the trustee in bankruptcy conditional upon the payment of costs and expenses. He should have granted the prayer of the trustee as to the transfer, and remitted the temporary receiver and the attorneys to the bankruptcy court for an adjudication and settlement of their respective claims."

In the case at bar the effect of the chancellor's order was exactly the same as if he had directed his receiver to seize the property of the bankrupt and sell it and appropriate the proceeds to the payment of the expenses he had allowed. This was an invasion of the jurisdiction of the bankrupt court. In the case of In re Rogers (D. C.) 8 Am. Bankr. Rep. 723, 116 Fed. 435, a similar question was presented. In that case the jurisdiction of the state court had been invoked under the insolvency laws of the state, and a receiver was appointed. Within the four months bankruptcy proceedings were instituted and an adjudication was had, and upon the application of the petitioning creditors an injunction was granted restraining the plaintiffs in the state court from prosecuting their suit. Afterwards counsel for the petitioning creditors and for the bankrupt applied to the bankrupt court for an order modifying the injunction granted by that court, so as to permit the attorney for the plaintiffs and the receiver in the state court

to apply to that court to have their fees and expenses fixed by that court. The bankrupt court declined to make that order, saying:

"This court further held that, if it should decide it ought to modify the injunction so as to allow counsel to go before the state court and claim that fees should be fixed by that court, it might in certain cases have very far-reaching and serious consequences—especially in cases where this court was of the opinion that the proceedings in the state court were coram non judice, because they had been suspended by the operation of the bankrupt law."

Application was then made to the state court to dissolve the temporary injunction and discharge the receiver, whereupon the state court entered an order directing its receiver to surrender the property to the trustee in bankruptcy upon the payment of the expenses, amounting to $32, incurred by the receiver, and upon the payment of $500 to the receiver, and the further payment of $500 to his attorneys. To this order of the state court the receiver excepted, and then an application was made to the bankrupt court for an order to the effect that, if the receiver of the state court should turn over the assets in his hands to the trustee, the trustee should at once proceed to sell enough of the property belonging to the bankrupt's estate to pay off the allowances made by the state court, and the allowance thus made should be a first lien on all the assets of the bankrupt. The bankrupt court refused to make that order, and said:

"The trustee either has or has not the right to the possession of the assets of the bankrupt in the hands of the temporary receiver of the state court. That court declines to pass upon the question of dissolving the temporary injunction and receivership in that case on the ground that the proceeding in bankruptcy suspended the proceeding in the state court. If, then, the proceedings are suspended, as is clearly the effect of the bankruptcy law, the state court has no right or authority to fix the fees of its receiver having charge of the property, and less right to refuse to turn over the same until those fees have been paid by the proper officers of the bankrupt court. If the assets are delivered to the trustee by the receiver of the state court, this court will consider any application for compensation which may be made by officers of the state court, and, if allowable, will grant suitable compensation; but it must definitely decline to recognize the authority of the state court to incumber the assets of the bankrupt by a judgment of this character, especially when accompanied by the ruling that such assets will not be delivered to the trustee in bankruptcy until the allowances thus made by the state court are paid off and discharged. The order would be declined for the further reason that the order of the superior court does not indicate in manner by whom the fees allowed in that court shall be paid; but this is unimportant, when contrasted with the principal question in the case, namely: Has the state court, upon proceedings instituted under the insolvency laws of the state, suspended by the enactment of the bankruptcy legislation, the right and authority to adjudicate liens against bankrupt's assets in favor of its own officers, and to refuse to surrender the assets to the proper official of the bankruptcy court until such fees are paid? Should such a precedent be recognized, it may not be impossible that in a large number of bankruptcy cases the assets might suffer from a mulcting process of this sort before they reach the hands of the officers appointed under the act of Congress to administer and distribute them. Besides, if the officers of the bankrupt court are entitled to the assets, the state court has no authority to impose conditions as a prerequisite to their delivery; nor can a bankrupt court, by action in any sense appropriate, give its sanction to any such imposition, whether expressly or impliedly made. The practice for which the order sought might be regarded as a precedent would not only largely increase the expenses of such litigation, but would inevitably result in great delay in the final disposition of bankruptcy litigation. It is

156 F.—18

represented to this court that, since the judge of the state court has held that he now has no authority to pass any order in the premises, the assets of the bankrupt will deteriorate and largely disappear, unless this court will direct a sale of a portion of the assets to pay off the debt created against them by the state court in behalf of its officials. This, if true, is, of course, deplorable. There are, however, considerations involved in this question which are far graver than the loss of assets in a particular case. They involve the supremacy of the Constitution and laws of the United States, the power of Congress to create a uniform system of bankruptcy, the legislation of Congress creating that system, and the settled principle that insolvency proceedings in state courts are suspended while the bankrupt law is in force. It is the duty of a court of the United States to take care that by no judicial order of its own the effectiveness and vigor of the laws with the enforcement and administration of which it is intrusted shall be nullified and whittled away."

These cases are decisive of the question at bar. This court cannot recognize the right of the state chancery court to make any order binding upon it with reference to property in its custody and over which it has exclusive jurisdiction. The state chancellor had no power to make the order, and the order itself is absolutely void.

The claim of the receiver of the state court is based upon three items. The one for expense account, $26.25, was allowed by the referee, and is not appealed from, and the order of the referee in that respect must stand.

As to the order for $450 for salary for the receiver, the referee held that the claim was absolutely without merit, because the receiver had rendered no service during the period for which it was allowed. In this view of the referee the court concurs. In re Kellog, 10 Am. Bankr. Rep. 7, 121 Fed. 333, 57 C. C. A. 547. The Supreme Court of the United States in a case presenting that question said:

"We are not prepared to go further than to allow compensation for services which were beneficial to the estate."

As no services beneficial to the estate were rendered in this case by the receiver, no allowance should be made, and the action of the referee as to that item in the account is approved.

The history of the remaining item of $139.60 in accounts is sufficiently given in the statement of the case. On August 29, 1905, when the receiver, under the order of the state chancellor dated August 10, 1905, turned over all the other assets in his hands, except some old books of account of Rogers & Stefani, these accounts for $139.60 he kept, presumably by the consent of Rogers & Stefani, as he had no other authority for doing so. To retain them otherwise was a violation of the order of the chancellor made on August 10, 1905, in which order he was directed to take credit for his services and expenses and turn over all the assets to Rogers & Stefani. It appeared that he did not have money enough to pay his allowances and expenses, and so he kept these accounts, as he now says, intending to collect them and pay himself, and, if he did not collect them, he expected Rogers & Stefani to pay him. They were saloon accounts. In his report and account filed October 25, 1905, and which was made in pursuance of the directions of the chancellor in his order of August 10, 1905, he charges these accounts to himself "for collection." On December 2, 1905, in an amendment to that report and account, he claims credit for the ac-

counts as uncollected. At what time he turned over these accounts to the trustee does not appear. He made no effort to collect them. He says he did not, because the bankruptcy proceedings had been begun on September 11, 1905, and he did not think he had a right to do so. When he turned them over to the trustee, if he ever did (about which there is some confusion in the evidence), they were a total loss. The order of the state court, as heretofore stated, giving him credit for these accounts, is void. After taking these accounts some time in August, 1905, he should have attempted to collect them and satisfy his allowances, and not have held them until October 25th without making any effort to collect them, thus depriving Rogers & Stefani from collecting them. Should he now, after they have become worthless, be permitted to surrender them to the trustee in bankruptcy and set up, in lieu of them, a claim against the bankrupt's estate to the prejudice of the creditors of the bankrupts? I do not think so. He made his choice, and he must abide by it. He either kept the accounts by agreement with Rogers & Stefani, or he kept them without right and in violation of Chancellor Bourland's order of August 10, 1905. If he took them by agreement with Rogers & Stefani, he was bound to exercise proper diligence to collect them, or stand the loss himself. If he kept them in violation of the chancellor's order, and without the consent of Rogers & Stefani, until they were worthless, making no effort to collect them, the same result follows. It would be inequitable and unjust to Rogers & Stefani and the creditors of their estate if the loss of these accounts should be shifted from him to the estate. He knew of the pendency of the bankruptcy proceedings from about the time they were instituted on September 11th until the 25th of October, when he filed report and claimed to hold the accounts in order to get his allowance paid. He claimed them, and took them for collection, to pay himself, notwithstanding the pendency of the bankruptcy proceedings. He should not now be heard to say that he claimed them, and undertook the collection of them while the bankruptcy proceedings were pending, and in the same breath say he did not try to collect them because the bankruptcy proceedings were pending, and he did not think he had the right to do so. It is equivalent to saying:

"I attempted to do a thing I did not think I had any right to do, and I did not do it because I did not think I had any right to do it, and yet, by reason of my undertaking to do the thing, and neglecting to do it, the estate sustained a loss for which I am not responsible."

Such a position is totally inconsistent and irreconcilable with equity and justice, and cannot be upheld.

The claim for this item should be disallowed, and the action of the referee approved and affirmed, at the costs of petitioner; and it is so ordered.